# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VLADIMIR BLASKO,<br><br>      Plaintiff,<br><br>   v.<br><br>KAREN THOMAS,<br><br>      Defendant. | Case No. 1:18-cv-01649-DAD-SAB<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING DENYING PETITION FOR HABEAS CORPUS<br><br>(ECF Nos. 6, 7, 8)<br><br>OBJECTIONS DUE WITHIN FOURTEEN DAYS |

## I.

## BACKGROUND

On July 13, 2007, Vladimir Blasko ("Petitioner") and Michal Krajmer, working as police officers, responded to a call about a disturbance in a bar. As the officers approached a table in the bar, Boris Kozma and Petitioner got into an altercation. Kozma and a friend were arrested and taken to the police station. The incident was witnessed by numerous individuals who were present on the patio of the bar during the altercation.

Kozma reported that he was beaten by the officer who arrested him while he was at the police station. Kozma was taken by ambulance to the hospital where he was examined and found to have a concussion, facial contusion in the area of the left eye, fracture of the small nose bones, cervical spine sprain, contusion of the front abdominal wall on the left, contusion of both wrists, and partial damage of the sensitive nerve fibers of the right radial nerve in the area of the forearm, injuries that were caused by blunt force trauma.

On June 3, 2010, an indictment was submitted to the District Court of Nitra in the case. An international arrest warrant was issued for Petitioner on October 29, 2010 in the District Court Nitra. Charges were brought against Krajmer due his participation in the incident at the bar. However, the charges were suspended because it was determined that he was acting at the instruction of his superior officer, Petitioner.

A three-judge panel conducted a trial *in absentia* in the District Court Nitra and a judgment issued on April 15, 2013. Several witnesses testified, however, the evidence was largely based on witness statements taken during the investigation of the incident. At the conclusion of the trial, Petitioner was found to have committed the criminal offense of abuse of power by a public official and a misdemeanor of bodily harm. Petitioner was sentenced to four years imprisonment.

Petitioner's attorney filed an appeal challenging the sentence imposed. On appeal, the court found errors in the sentencing but affirmed the sentence of four years of imprisonment on November 7, 2013. On January 21, 2014, an international arrest warrant issued for Blasko.

On February 14, 2017, the Ministry of Justice of the Slovak Republic requested the extradition of Petitioner pursuant to an agreement of extradition between the United States of America and the European Union. On October 2, 2017, the Government filed an action seeking the extradition of Petitioner to the Slovak Republic. See In the Matter of the Extradition of Vladimir Blasko, No. 1:17-cv-00067-DAD-SAB (E.D. Cal.) Petitioner appeared on October 6, 2017, and was ordered detained. Petitioner filed a request for bail, which was denied by United States Magistrate Judge Barbara A. McAuliffe on February 16, 2018. Blasko appealed the denial of bail; and, on August 1, 2018, District Judge Dale A. Drozd granted the motion for bail pending the extradition hearing.

An extradition hearing was held on October 30, 2018, after which this court found that Petitioner was extraditable.

On November 30, 2018, Petitioner filed the instant petition for a writ of habeas corpus.

Petitioner filed his petition on January 23, 2019.[1]  On February 13, 2019, Respondent filed an opposition to the petition.  Petitioner filed a reply on February 20, 2019.

## II.

## LEGAL STANDARD

"Extradition from the United States is a diplomatic process that is initiated by a request from the nation seeking extradition directly to the Department of State."  Manta v. Chertoff, 518 F.3d 1134, 1140 (9th Cir. 2008) (quoting Prasoprat v. Benov, 421 F.3d 1009, 1012 (9th Cir. 2005)).  Extradition requests are evaluated by the State Department to determine whether the request falls within scope of the relevant extradition treaty.  Santos v. Thomas, 830 F.3d 987, 991 (9th Cir. 2016); Prasoprat, 421 F.3d at 1012.  If the request falls within the treaty, a United States Attorney files a complaint in the district court seeking an arrest warrant for the person sought to be extradited.  Santos, 830 F.3d at 991; Prasoprat, 421 F.3d at 1012.

"Extradition from the United States is governed by 18 U.S.C. section 3184, which confers jurisdiction on 'any justice or judge of the United States, or any magistrate judge authorized so to do by a court of the United States' to conduct an extradition hearing under the relevant extradition treaty between the United States and the requesting nation, and to issue a certification of extraditability to the Secretary of State.' "  In re Extradition of Santos, 795 F.Supp.2d 966, 969 (C.D. Cal. 2011); accord Santos, 830 F.3d at 991-992.  The judge or magistrate is to hold a hearing to determine "whether (1) the crime is extraditable; and (2) there is probable cause to sustain the charge."  Prasoprat, 421 F.3d at 1012.  "[T]he scope of the extradition court's review 'is limited to a narrow set of issues concerning the existence of a treaty, the offense charged, and the quantum of evidence offered.  The larger assessment of extradition and its consequences is committed to the Secretary of State."  Santos, 830 F.3d at 991 (quoting United States v. Kin–Hong, 110 F.3d 103, 120 (1st Cir.1997)).

The court has limited authority in the overall process of extradition as "[e]xtradition is a matter of foreign policy entirely within the discretion of the executive branch, except to the

---

[1] The Court notes that the Ninth Circuit has held that the judge who decided the extradition proceeding need not recuse himself from reviewing the petition for habeas corpus.  Oen Yin-Choy v. Robinson, 858 F.2d 1400, 1408 (9th Cir. 1988).

extent that the statute interposes a judicial function." Vo v. Benov, 447 F.3d 1235, 1237 (9th Cir. 2006) (quoting Lopez-Smith v. Hood, 121 F.3d 1322, 1326 (9th Cir.1997)). The court is not considering whether the extraditee is guilty, but merely whether there is competent legal evidence which would justify holding the individual for trial. Collins v. Loisel, 259 U.S. 309, 315-16 (1922). Competent evidence to establish probable cause is not necessarily evidence competent to convict. Fernandez v. Phillips, 268 U.S. 311, 312 (1925).

In the extradition hearing, there are no discretionary decisions for the judge or magistrate to make. Prasoprat, 421 F.3d at 1012. If the judge or magistrate "deems the evidence sufficient to sustain the charge under the provisions of the proper treaty or convention, or under section 3181(b), he shall certify the same, together with a copy of all the testimony taken before him. . .." 18 U.S.C. § 3184; see Santos, 830 F.3d at 992 ("So long as "the judicial officer determines that there is probable cause, he 'is required to certify the individual as extraditable to the Secretary of State.' "). It is within the discretion of the Secretary of State to determine whether the individual will be surrendered. Prasoprat, 421 F.3d at 1012.

Review of a finding of extraditability is not subject to direct appeal. Collins v. Miller, 252 U.S. 364, 369 (1920); U.S. ex rel. Sakaguchi v. Kaulukukui ("Sakaguchi"), 520 F.2d 726, 730 (9th Cir. 1975); Santos, 830 F.3d at 993. Therefore, a petitioner is required to seek relief by filing a petition for habeas corpus. Sakaguchi, 520 F.2d at 729; Manta, 518 F.3d at 1140. In challenging the magistrate judge's finding of extraditability, a petition for "habeas corpus is available only to inquire whether the magistrate had jurisdiction, whether the offense charged is within the treaty and, by a somewhat liberal extension, whether there was any evidence warranting the finding that there was reasonable ground to believe the accused guilty." Fernandez, 268 U.S. at 312; accord Manta, 518 F.3d at 1140; Santos, 830 F.3d at 1001. The court is to uphold the "magistrate judge's determination that there is probable cause to believe the accused committed the crime charged if there is any competent evidence in the record to support it." Manta, 518 F.3d at 1145; Santos, 830 F.3d at 1001. The habeas court reviews purely legal questions and mixed questions of law and fact de novo and purely factual questions for clear error. Quinn v. Robinson, 783 F.2d 776, 791 (9th Cir.1986).

**III.**

**DISCUSSION**

In this instance, Petitioner is challenging only two of this court's findings: 1) that the extradition is not barred by the statute of limitations for execution of punishment; and 2) that there is sufficient evidence to establish probable cause to believe that Petitioner committed the offense charged. Therefore, the Court does not address the finding that a valid treaty exists and that the offense is extraditable under the treaty as Petitioner has waived a challenge to these findings and the other findings made in the order finding Petitioner to be extraditable.

**A.     Whether the Statute of Limitations for Execution of Punishment Has Run**

Petitioner argues that this court erred in finding that the statute of limitations has been tolled because Petitioner sojourned abroad to avoid prosecution. Petitioner contends that there is no evidence that would support a finding that he sojourned in the United States with the intent to avoid punishment. Petitioner states that, despite the incident alleged, he remained employed with the police department until October 20, 2009. He married his wife in December 2009, who was an international student attending Fresno Pacific University, and took all lawful steps to join his wife in the United States. Petitioner contends that he received a passport and student visa to come to the United States, was admitted to Fresno Pacific University, and travelled to Fresno in 2010. Petitioner states that he did not know that an indictment had been filed against him until he was arrested by immigration officials for failing to update his visa. Petitioner contends that it was during those proceedings that he was informed of the international arrest warrant. At that time, he filed an asylum application seeking withholding from removal. Petitioner argues that after he was released from immigration custody he continued to live openly and notoriously in Fresno, successfully passing his examination and receiving a Building Contractor's license through the State of California. Petitioner also argues that this court erred in relying on the declaration by Judge Ondrejova to find that the statute of limitations had been tolled and that the court must conduct its own analysis of the statute to ensure that it complies with the extradition treaty.

Respondent counters that this court properly relied on the declaration of Judge Ondrejova

stating that under Slovakian law the fact that Petitioner knew of the sentence and fought extradition would toll the statute of limitations. Petitioner contends that it is established precedent that the United States is to give credence to foreign proceedings and Judge Ondrejova's determination should be dispositive on the issue. Respondent opines that the court should reject the argument that it improperly relied on declaration of Judge Ondrejova to find that the statute of limitations has been tolled. Respondent further contends that there is evidence in the record from which the court can infer that Petitioner has acted with intent to avoid serving his sentence. Respondent also argues that Petitioner is relying on facts that are not relevant to the limited role of these extradition proceedings and is arguing issues that are within the purview of the Secretary of State.

Petitioner replies that the Government does not dispute that judgment was entered in Slovakia on April 15, 2013, or that the statute of limitations for the punishment is five years. Petitioner argues that the Court is required to do an independent analysis to determine if there is any evidence that he has sojourned abroad to avoid punishment. Petitioner argues that the cases relied on by the Government are distinguishable and that the declaration of Judge Ondrejova should not be relied on in carrying out the required treaty analysis.

The statute of limitations at issue here provides that the imposed punishment cannot be enforced after the expiration of the limitations period, which the magistrate found would be five years based on the sentence imposed. (Memorandum and Order Certifying Extraditability of Vladimir Blasko ("Memo. Cert. Extraditability") 49.[2]) However, under Article 90(2) of the Slovakian Penal Code, the limitations period is tolled where the "convicted sojourned abroad with the intent to avoid the punishment."

1. Whether deference to Slovakian interpretation of statute was error

Petitioner has not presented any argument or evidence that Judge Ondrejova's interpretation of the statute was incorrect but argues that this Court accepted Judge Ondrejova's conclusory declaration stating that he sojourned abroad to avoid prosecution with the intent to

---

[2] All further references to the memorandum are to ECF No. 55, filed November 19, 2018, in In the Matter of the Extradition of Valadimir Blasko, no. 1:17-cv-00067-DAD-SAB (E.D. Cal.).

avoid punishment. Respondent counters that this court correctly deferred to Judge Ondrejova's assessment of Slovakian law and that out of respect for the other nation's sovereignty and due to erroneous interpretation of foreign statues such deference is to be given to the requesting nations interpretation of its own laws. Petitioner argues that the Court cannot rely on Judge Ondrejova's conclusion that the statute of limitations was tolled

Petitioner argues that this court incorrectly relied on <u>Sainez v. Venables</u>, 588 F.3d 713 (9th Cir. 2009), to find that the court should decline to interpret foreign law. In <u>Sainez</u>, Mexico had requested the extradition of Sainez on homicide and battery charges. <u>Sainez</u>, 588 F.3d at 715. Sainez contested extradition arguing that the statute of limitations had run on both charges. <u>Id.</u> The magistrate judge certified extradition on the homicide charge only, finding the statute of limitations had run on the battery charges. <u>Id.</u> Sainez filed a petition for habeas corpus that was denied by the district court. <u>Id.</u> Petitioner appealed the denial of his habeas petition to the Ninth Circuit. <u>Id.</u> On appeal, Sainez conceded that the statute of limitations on the murder charge had not run under Mexican law, but argued that the United States statute of limitations barred his prosecution on the homicide charge. <u>Id.</u>

The treaty at issue provided that extradition would not be granted where prosecution or the penalty for the offense for which extradition is sought has become barred by lapse of time according to the laws of the requesting or requested nation. <u>Sainez</u>, 588 F.3d at 716. To resolve the issue the court considered the statute of limitations in the United States for the offense that was most closely analogous to the charged offense and applied that statute of limitations. <u>Id.</u> The appellate court rejected Sainez argument that the arrest warrant did not toll the statute of limitations because it was not analogous to a United States indictment. <u>Id.</u> at 717. The court adhered to the established approach of giving credence to foreign proceedings stating, "we have declined to rule on the procedural requirements of foreign law out of respect for other nations' sovereignty 'and because we recognize the chance of erroneous interpretation is much greater when we try to construe the law of a country whose legal system is not based on common law principles.' " <u>Id.</u> (quoting <u>Emami v. United States Dist. Court</u>, 834 F.2d 1444, 1449 (9th Cir.1987)).

Petitioner argues that since the <u>Sainz</u> court was not considering the statute of limitations itself but a secondary issue, whether a Mexican arrest warrant was equivalent to a United States indictment, <u>Sainz</u> should not be followed in determining the statute of limitations issue.

Petitioner argues that where the extradition treaty expressly requires the United States to review and interpret the foreign county's law, courts may do so to the limited extent necessary to ensure compliance with the applicable extradition treaty. In his petition, Petitioner cites to <u>Skaftouros v. United States</u>, 667 F.3d 144 (2d Cir. 2011) to support his argument that the Court is required to interpret the statute of limitations exception in this instance. (ECF No. 6 at 16.) However, in his reply, Petitioner argues that <u>Skaftouros</u> is noticeably distinguishable from the instant case. (ECF no. 8 at 5.)

In <u>Skaftouros</u>, the Second Circuit considered the court's limited role in extradition proceedings.

> The narrow scope of review in extradition proceedings and the mandate that treaty obligations be liberally construed are based on "[t]he interests of international comity." <u>Ahmad</u>, 910 F.2d at 1067. Accordingly, it has long been recognized that an extradition judge should avoid making determinations regarding foreign law. <u>See</u> <u>Jhirad</u>, 536 F.2d at 484–85 ("It is not the business of our courts to assume the responsibility for supervising the integrity of the judicial system of another sovereign nation. Such an assumption would directly conflict with the principle of comity upon which extradition is based."); <u>see also</u> <u>Grin v. Shine</u>, 187 U.S. 181, 190, 23 S.Ct. 98, 47 L.Ed. 130 (1902); <u>In re Assarsson</u>, 635 F.2d 1237, 1244 (7th Cir.1980).
>
> In addition to principles of international comity, the reluctance of our courts to fastidiously examine foreign law in extradition proceedings is founded in principles of judicial modesty. <u>See</u> <u>In re Assarsson</u>, 635 F.2d at 1244 ("The possibility of error warns us to be even more cautious of expanding judicial power over extradition matters."). Such modesty is well placed in the extradition context, which "is not the occasion for an adjudication of guilt or innocence," <u>Melia</u>, 667 F.2d at 302. Any arguments regarding the demanding country's compliance with its own laws, therefore, are properly reserved for the courts of that country. <u>See</u> <u>Fernandez v. Phillips</u>, 268 U.S. 311, 312, 45 S.Ct. 541, 69 L.Ed. 970 (1925) ("[I]t has been presented as if this were the final stage and every technical detail were to be proved beyond a reasonable doubt. This is not the law.").
>
> For all of these reasons, U.S. courts are strongly discouraged from reviewing whether the demanding country has complied with its own law and, indeed, it is error to do so except to the limited extent necessary to ensure compliance with the applicable extradition treaty. <u>See</u> <u>United States ex rel. Petrushansky v. Marasco</u>, 325 F.2d 562, 565 (2d Cir.1963) (Thurgood Marshall, J.) (role of a U.S. court is "limited to ensuring that the applicable provisions of the treaty and the governing American statutes are complied with."); <u>see also</u> <u>Sacirbey</u>, 589 F.3d at 65

(observing that courts should "give[ ] meaning to treaty language ... while avoiding unwarranted incursions into the details of foreign criminal procedure."). Technical objections to the demanding nation's compliance with its own law are particularly disfavored. As the Supreme Court has cautioned, in the extradition context, "[f]orm is not to be insisted upon beyond the requirements of safety and justice." Fernandez, 268 U.S. at 312, 45 S.Ct. 541; see also Grin, 187 U.S. at 184–85, 23 S.Ct. 98 ("[W]here the proceeding is manifestly taken in good faith, a technical noncompliance with some formality of criminal procedure should not be allowed to stand in the way of a faithful discharge of our obligations.").

Nothing in our opinion in Sacirbey should be read to invite judges to freely examine whether the demanding country has complied with its own laws. Properly construed, Sacirbey is not inconsistent with the long-standing principle that we now reaffirm: Judicial officers considering extradition requests—and, by extension, district judges considering habeas petitions challenging extradition orders—should not engage in an analysis of the demanding country's laws and procedure, except to the limited extent necessary to ensure that the requirements of the federal extradition statute and the applicable extradition treaty have been satisfied.

Skaftouros, 667 F.3d at 156.

The treaty at issue in Skaftouros did not permit extradition where "'from lapse of time or other lawful cause, according to the laws of either of the surrendering country [sic] or the demanding country, the criminal is exempt from prosecution or punishment for the offense for which the surrender is asked." Skaftouros, 667 F.3d at 161. The Second Circuit found that because the treaty itself required an examination of whether the statute of limitations of either the demanding or asylum country had expired, it was proper for the district court to examine the requesting country's law for the limited purpose of determining whether its statute of limitations had expired. Id. In support of its argument that the statute of limitations had not expired,

the Government submitted a letter from the Public Prosecutor of the Court of Appeals of Athens stating that the statute of limitations had been so tolled in this case, owing to Skaftouros's failure to appear to answer the charges against him. In order to show that Skaftouros had been properly served with the indictment, a requirement of Article 113, the Government produced the April 17, 1991, request from the Public Prosecutor that police serve the indictment; the May 6, 1991, confirmation from the police to the Public Prosecutor that the indictment had been served on Skaftouros's mother; and the October 1991 Order suspending the proceedings, which noted the "legal service" of the indictment on May 5, 1991. In the habeas proceeding, it was Skaftouros's burden as the petitioner to show that the statute of limitations had not in fact been extended by operation of Article 113 and therefore had expired. This Skaftouros attempted to do by arguing that only the original certificate of service of the indictment would suffice to show that the statute of limitations had been extended. However, Skaftouros offered no authority for this position, save for the unsworn and unsupported assertion of his own lawyer in Greece.

Id. at 161.  The appellate court found that the district court had erred in granting the writ of habeas corpus by placing the burden of proof on the government to show that proof of service of the order extending the statute of limitations was served on Skaftouros or his close relative.  Id. The evidence before the court strongly suggested that the statute of limitations had been tolled and Skaftouros did not meet his burden of showing that the applicable statute of limitations had expired or that the treaty had not been satisfied.

The Court does not find that the issue in Skaftouros was "notably distinguishable" from the instant action.  In both Skaftouros and the instant action the issue was whether the statute of limitations had run and in both instances the requesting country presented a legal opinion on the issue.  Here, similar to Skaftouros, the requesting nation has presented strong evidence, the declaration of Judge Ondrejova, that the statute of limitations has been tolled.  The Ninth Circuit has recognized that it is not always clear whether a prosecution is time barred, Kamrin v. United States, 725 F.2d 1225, 1227 (9th Cir. 1984); and courts commonly defer to a foreign official's interpretation of their own law in extradition proceedings.  See Matter of Extradition of Schumann, No. 18 CR 283, 2018 WL 4777562, at *4 (N.D. Ill. Oct. 3, 2018) (prosecutor's statement of the limitations period for the charged offense); Matter of Extradition of Manea, No. CV 15 MJ 157 (JGM), 2018 WL 1110252, at *11 (D. Conn. Mar. 1, 2018) ("Romanian officials have detailed the tolling process as it applies to this case, and this Court cannot 'question the reliability or trustworthiness of a judicial decree from a foreign nation.' "); United States v. Struga, 231 F.Supp.3d 244, 251 (E.D. Mich. 2017) (Albanian Supreme Court's reinstatement of conviction reversing appellate court's finding that statute of limitations had run); Schmeer v. Warden of Santa Rosa Cty. Jail, No. 3:14CV285/MCR/CJK, 2014 WL 5430310, at *6 (N.D. Fla. Oct. 22, 2014) (accepting German authorities' interpretation of applicable statute of limitations).

The Court finds no error in giving deference to the declaration of Judge Ondrejova in determining whether the statute of limitations had been tolled.

2.      Whether there is evidence that Petitioner intended to avoid punishment

Petitioner also argues that there is no evidence that he sojourned abroad with the intent to

avoid punishment. Respondent counters that this court considered the evidence in the record and properly found that Petitioner had attempted to avoid prosecution by filing his application for asylum and attempted to avoid punishment by his actions in this proceeding. Petitioner responds that there is no evidence in the record to support a finding that he sojourned abroad with the intent to avoid punishment.

As discussed above, this court first considered the declaration of Judge Maria Ondrejova in determining whether the statute of limitations had tolled. "In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence." Fed. R. Civ. P. § 44.1.

Judge Ondrejova stated that under Slovakian law, the fact that Petitioner was aware of the judgment and has been fighting extradition would toll the statute of limitations. (Memo. Cert. Extraditability at 50.) This court found that "under Slovakian law, the fact that Blasko knew about the charges and has been fighting extradition within the limitations period would toll the limitations period under Article 90" relying on this declaration. (Id.) Contrary to Petitioner's argument, Judge Ondrejova did not merely state that he had sojourned abroad to avoid prosecution. Judge Ondrejova stated that, because Petitioner was aware of the judgment against him and had been fighting extradition, under Slovakian law he would be considered to have sojourned abroad to avoid prosecution.[3]

This court then considered the evidence that would support a finding that Petitioner was aware of the judgment against him and had fought extradition.

Further, although Blasko argues that he did not flee to avoid prosecution and has

---

[3] Judge Ondrejova's declaration states:

> As I stated in my first declaration, the enforcement of the four-year sentence of imprisonment is not barred by the applicable statutes of limitations because Mr. Blasko sojourned abroad with the intent to avoid the punishment. Article 90(3) of the Criminal Code of the Slovak Republic states as follows: "The limitation period shall not include the period during which the punishment could not be enforced because the convicted sojourned abroad with the intent to avoid the punishment, or they were serving punishment by prison sentence during it." The fact that Mr. Blasko has been fighting against his extradition, after being arrested in October 2017, confirms that he has known about the judgment and that he has sojourned abroad with the intent to avoid punishment under Article 90(3) of the Criminal Code of the Slovak Republic.

In the Matter of the Extradition of Valadimir Blasko, no. 1:17-cv-00067-DAD-SAB (E.D. Cal.), ECF No. 52-1 at 4.

been living [openly] in the United States, the fact that Blasko could have taken steps to conceal his whereabouts does not mean that he was not sojourning aboard to avoid prosecution under Slovakian law. Upon questioning during the hearing, Blasko responded that whether he intended to sojourn abroad to avoid punishment would be triggered when the Court finds that Blasko was aware of the punishment and sought to avoid prosecution. Blasko's evidence establishes that he was aware since 2012 that there was an international warrant for his arrest and Blasko "may have felt safe enough being thousands of miles away from the government that was seeking to prosecute him[,]" Man-Seok Choe v. Torres, 525 F.3d 733, 741 (9th Cir. 2008). Blasko sought asylum when he became aware that there was an international warrant for his arrest, and, as discussed, has been actively fighting extradition within the limitations period. Therefore, Blasko was aware during the limitations period that there was an international arrest warrant issued by Slovakia, has been residing in the United States, and sought asylum when he learned of the warrant. Along with his seeking to avoid extradition within the limitations period, this is circumstantial evidence that would support Judge Onedrejova's finding that Blasko has been sojourning abroad to avoid prosecution and serving the sentence in Slovakia.

(Memo. Cert. Extraditability at 50-51.)

Although Petitioner argues that there is no evidence that he attempted to flee or conceal his presence or location, he has presented no authority that such actions are required to have been found to be avoiding serving his sentence under Slovakian law. Petitioner came to the United States in 2010 and did not seek asylum until after he learned that there was an international arrest warrant for him in 2012. Therefore, a reasonable inference exists that Petitioner sought asylum in order to avoid being extradited on the international arrest warrant. Further, as the court found, Petitioner has been seeking to avoid extradition in this current action and it is undisputed that he was aware within the limitations period that he had been convicted of the charges in Slovakia and is being sought to serve his sentence. Petitioner's counsel has submitted a declaration stating that on Friday, June 5, 2015, she received evidence from the Office of Chief Counsel in Petitioner's immigration case which contained the court judgment from the criminal proceedings and appeal in Slovakia. (Decl. of Jennifer L. Doerrie ¶ 13, ECF No. 6-1.) Petitioner contends that the statute of limitations to impose punishment expired on April 15, 2018. Plaintiff clearly has been aware of the Slovakian judgment since June 5, 2015, well within the limitations period and has been seeking to avoid extradition in this action during the limitations period.

This court did not merely accept the conclusory statement that Petitioner had sojourned abroad to avoid punishment but considered the evidence in the record and found that it provided

factual support for the conclusion that Petitioner had sojourned abroad to avoid prosecution.

Petitioner appears to argue that he could not sojourn abroad to avoid prosecution or punishment because he did not know of the charges or the judgment in Slovakia until after he was in the United States. Yet, he has cited no legal authority that requires knowledge of the reason extradition is requested at the time that an extraditee leaves the requesting state to find that an individual was sojourning abroad to avoid prosecution.

"When construing a foreign statute, the Court certainly must presume that the most pertinent and authoritative source on the scope and import of any foreign law is the plain language of the statute itself." Knight Capital Partners Corp. v. Henkel Ag & Co., KGaA, 290 F. Supp. 3d 681, 687 (E.D. Mich. 2017); see also S.E.C. v. Gibraltar Glob. Sec., Inc., No. 13 CIV. 2575 GBD JCF, 2015 WL 1514746, at *2 (S.D.N.Y. Apr. 1, 2015) (the principal that statutory construction begins with the plain language of the statute applies to interpretation of foreign as well as domestic statutes). Under traditional rules of statutory interpretation, the Court must begin with the plan meaning of the statutory language. United States v. Flores, 729 F.3d 910, 914 (9th Cir. 2013). When a term is not defined in the statute, the court is to give the term its ordinary meaning. Taniguchi v. Kan Pac. Saipan, Ltd., 566 U.S. 560, 566 (2012) Miranda v. Anchondo, 684 F.3d 844, 849 (9th Cir. 2012) (quoting Perrin v. United States, 444 U.S. 37, 42 (1979)). In determining the "plain meaning" of a word, the court may consult dictionary definitions, which are trusted to capture the common contemporary understandings of words. Flores, 729 F.3d at 914; Transwestern Pipeline Co., LLC v. 17.19 Acres of Prop. Located in Maricopa Cty., 627 F.3d 1268, 1270 (9th Cir. 2010).

Here, the court considers the meaning of the word "sojourn." Black's Law Dictionary defines sojourn as "[a] temporary stay by someone who is not just passing through a place but is also not a permanent resident." Black's Law Dictionary 1519 (9th Ed. 2009). Similarly, Merriam-Webster defines sojourn as "to stay as a temporary resident." See https://www.merriam-webster.com/dictionary/sojourn (last visited February 13, 2019). The Cambridge Dictionary similarly defines sojourn as a temporary stay at one place, especially while travelling or a short period when a person stays in a particular place. See

https://dictionary.cambridge.org/us/dictionary/english/sojourn (last visited February 13, 2019.) Accordingly, the statute of limitations to avoid punishment would be stayed where an individual has stayed abroad to avoid punishment.

As discussed above, the evidence establishes that Petitioner has been aware since June 5, 2015 of the Slovakian judgment and has been fighting extradition since his initial appearance on October 16, 2017, well within the limitations period. Based on this evidence, this court found that there was evidence to support "Judge Onedrejova's finding that Blasko has been sojourning abroad to avoid prosecution and serving the sentence in Slovakia." (Memo. Cert. Extraditability at 50-51.) Further, regardless of the reasons that Petitioner argues he should not be extradited, he cannot credibly argue that his actions in opposing extradition are not taken with the intention to avoid serving his sentence in Slovakia.

Finally, the only logical interpretation of the phrase "intent to avoid punishment" would have to include tolling during the period in which an extraditee is fighting extradition. As this court previously found, any other interpretation of the statute would result in an incongruous result in which an extraditee could exercise his due process rights to contest the extradition and after allowing the statute of limitations to run, raise the argument that he could no longer be extradited. (Memo. Cert. Extraditability at 51 n.3.) The Court finds no merit to Petitioner's argument that the Government had to ensure that the statute of limitations did not run and to seek extradition earlier to avoid the limitations period running. The purpose of the tolling provision is to avoid the specific result that Petitioner seeks here.

The purpose of the tolling provision would appear to be directly applicable to the situation presented here, where an extraditee is arrested within the limitations period, has knowledge that he is being sought to serve his punishment, and seeks to avoid extradition. In the circumstance, tolling the statute of limitations protects both the right of Petitioner to raise his due process claims challenging the extradition and the requesting States rights under the treaty.

Petitioner presents argument regarding the delay in bringing charges and ultimately bringing the request for extradition. However, it is not for this Court to assess the investigative, judicial, and penal systems of foreign nations when reviewing an extradition request. See Munaf

v. Geren, 553 U.S. 674, 700–01 (2008) (The Supreme Court has recognized that it is for the political branches, not the judiciary, to assess practices in foreign countries and to determine national policy in light of those assessments.); Jhirad v. Ferrandina, 536 F.2d 478, 484–85 (2d Cir. 1976) ("It is not the business of our courts to assume the responsibility for supervising the integrity of the judicial system of another sovereign nation. Such an assumption would directly conflict with the principle of comity upon which extradition is based.").

The Court properly found that the statute of limitations has been tolled during the pendency of this extradition proceeding.

**B.     Whether there is Competent Evidence to Establish Probable Cause**

Petitioner argues that the government did not produce documents that are sufficiently competent to establish probable cause. Petitioner argues that there is no evidence that the statements contained in the documents were provided under oath or were subject to cross examination but are merely summaries of the witness statements. Petitioner complains that none of the actual witness statements have been provided. In addition, Petitioner argues that the proceedings in Slovakia were riddled with procedural irregularities that question the competence of the evidence submitted.

Respondent counters that the Ninth Circuit and other courts have repeatedly upheld probable cause findings based on summaries of evidence against the fugitive. Respondent argues that a probable cause finding can be made based on a foreign judgment of conviction. Even a conviction in absentia has been upheld based on evidence summarized in a court's opinion. Respondent contends that the evidence submitted provides ample support for this court's finding that probable cause exists that Petitioner committed the offenses alleged. Finally, Respondent argues that the cases upon which Petitioner relies are factually distinguishable because they involved charges that were factually unsupported unlike this case where there is ample support in the judgment to find probable cause.

"When reviewing a magistrate's finding of probable cause in an extradition proceeding, the court examines the record to see whether there was competent evidence to support the conclusion that there was probable cause to believe the petitioner guilty." Zanazanian v. United

States, 729 F.2d 624, 626 (9th Cir. 1984). The magistrate judge is to certify that the individual is extraditable only where "he deems the evidence sufficient to sustain the charge under the provisions of the proper treaty or convention." 18 U.S.C. § 3184.

1.    United States Law and the Treaty Only Require that the Documents Produced by Authenticated and There is No Requirement that Statements be Made Under Oath or that Declarations or Affidavits are Required to be Produced

An extradition hearing to determine if probable cause exists is akin to a grand jury investigation or a preliminary hearing under Rule 5.1 of the Federal Rules of Criminal Procedure. Santos, 830 F.3d at 991. The evidence need not meet the standards for admissibility at trial and the finding of probable cause can be based on hearsay in whole or in part. Id. The extradition hearing involves the preliminary examination of evidence and is not a trial. Id.

Pursuant to Article 1 of the the treaty at issue here,

It is agreed that the United States of America and the Slovak Republic shall, upon requisition duly made as herein provided, deliver up to justice any person, who may be charged with, or may have been convicted of any of the criminal offenses specified in Article II of this Treaty, and who shall seek an asylum or shall be found within their respective territories; provided that such surrender shall take place only upon such evidence of criminality, as according to the laws of the place where the fugitive or person so charged shall be found, would justify his apprehension and commitment for trial if the criminal offense had been there committed.

(ECF No. 1 at 127.)

Petitioner makes much of the fact that the evidence relied here were only the witness statements, as recited in the Slovakian judgment, and there is no indication that they were given under oath or penalty of perjury.

In Zanazanian, the Ninth Circuit addressed a treaty in which the identical "evidence of criminality" language was used. Zanazanian, 729 F.2d at 626. The appellate court found that it is clearly established that at least one level of hearsay is competent for extradition purposes. Id. The court considered that in evaluating similar treaty language, the Supreme Court had found that "[t]he phrase 'such evidence of criminality' as used in the treaty refers to the scope of the evidence or its sufficiency to block out those elements essential to a conviction. It does not refer to the character of specific instruments of evidence or to the rules governing admissibility"; therefore, "unsworn statements of absent witnesses may be acted upon by the committing

magistrate, although they could not have been received by him under the law of the state on preliminary examination." Id. (quoting Collins, 259 U.S. at 317). The Ninth Circuit has also found that "[n]either the applicable treaty nor United States law requires that evidence offered for extradition purposes be made under oath." Zanazanian, 729 F.2d at 627.

Further, the Court finds no merit to petitioner's argument that the statements in support of the request for extradition were not subject to cross examination or made available to be questioned by the defense. There is no right in an extradition hearing to cross examine witnesses or to introduce evidence to rebut that of the requesting state. Oen Yin-Choy v. Robinson, 858 F.2d 1400, 1407 (9th Cir. 1988).

The applicable treaty here states,

> If the criminal offender shall have been convicted of the criminal offense for which his extradition is asked, a copy of the sentence of the court before which such conviction took place, duly authenticated, shall be produced. If, however, the criminal offender is merely charged with crime, a duly authenticated copy of the warrant of arrest in the State where the crime was committed, and of the depositions upon which such warrant may have been issued, shall be produced, with such other evidence or proof as may be deemed competent in the case.

(ECF No. 1 at 131.) "The usual rules of evidence do not apply in extradition hearings and, unless the relevant treaty provides otherwise, the only requirement for evidence is that it has been authenticated." Manta, 518 F.3d at 1146. "Neither the applicable treaty nor United States law requires that evidence offered for extradition purposes be made under oath." Zanazanian, 729 F.2d at 627. The law in this circuit is well established that evidence in support of extradition does not need to be made under oath. Manta, 518 F.3d at 1147.

Petitioner argues that in In re Extradition of Platko, 213 F.Supp.2d 1229 (S.D. Cal. 2002), the court concluded that the papers submitted by the requesting country were insufficient because they did not contain any sworn statement, affidavit, or declaration by any person with knowledge of the underlying facts to support the requesting county's charging papers. The Platko court found that only two of the charges, fraud and breach of trust by a bailee were extraditable offenses under the treaty and the dual criminality prong was satisfied. 213 F.Supp.2d at 1236. The Platko court found that it appeared that the statements had to be vouched for in affidavits and that the treaty required sworn authentication of the underlying allegations.

Id. at 1236-38. However, this Court respectfully disagrees with the Platko court's findings which are contrary to the Ninth Circuit's subsequent holding in Manta, 518 F.3d at 1147.

In Manta, the petitioner argued that the extradition documents were not competent to establish probable cause because the charges were not supported by sworn statements and depositions supporting the international arrest warrant were not produced. Manta, 518 F.3d at 1145. The language of the statute here is substantially identical to that at issue in Manta. Both require that where a fugitive is charged with a crime, "a duly authenticated copy of the warrant of arrest in the country where the crime was committed, and of the depositions upon which such warrant may have been issued, shall be produced, with such other evidence or proof as may be deemed competent in the case." Id. at 1146. The Ninth Circuit found that the language of the treaty "with such other evidence or proof as may be deemed competent in the case" allowed such evidence and the treaty did not require anything other than that the documents be authenticated. Id. The Ninth Circuit also rejected the argument that the language of the treaty required depositions to be produced. Id. at 1146. The language of the treaty made it clear that depositions are required only where the warrant was issued on such depositions. Id. The record did not indicate that any such statements in support of the arrest warrant existed and were not produced. Id. at 1147. While the arrest warrant referenced testimony of the witnesses, nothing suggested that any of the statements were documented and there was no reason to believe that the arrest warrant was based on anything other than the summary version of the testimonies in the prosecutor's statement. Id. The fact that the prosecutor's statement summarized the witnesses' statements was of no significance. Id.

2.     Competent Evidence in the Record Supports the Finding that Probable Cause Exists

This Court made two findings in considering whether competent evidence existed to support extradition. First, the Court found that the underlying treaty did not distinguish between an *in abstentia* conviction and a conviction where the individual was present at trial and therefore the judgment in this instance was competent evidence to support the extradition (Memo. Cert. Extraditability at 12-16.) In making such a finding the Court considered that the

judgment itself set forth "an extensive recitation of the evidence that was considered and contains the testimony and statements of twenty witnesses and other documentary evidence that was considered during the trial of the matter. (Id. at 16.) The Court also found that the documentation itself was sufficient to establish that probable cause existed to believe that Petitioner had committed the crime for which he was sought. (Id. at 16-47.)

The treaty itself provides that "[i]f the criminal offender shall have been convicted of the criminal offense for which his extradition is asked, a copy of the sentence of the court before which such conviction took place, duly authenticated, shall be produced." (Memo. Cert. Extraditability at 14.) While Petitioner argues that the conviction here was *in absentia*, the treaty does not differentiate between a conviction where the petitioner was present and an *in absentia* conviction. The treaty does not require that the judgment be sworn nor does it require an affidavit from the sentencing judge.

As the Court noted,

> In re Ribaudo is distinguishable from the instant action as the Treaty in this instance does not distinguish between a conviction obtained where the individual was present and a conviction in absentia. Here, the Treaty provides that the United States and the Slovak Republic have agreed to deliver up to justice any person who has been charged with or convicted of any criminal offense specified in the Treaty. Annex, Art. I, ECF No. 1 at 127.) Article XII(5) of the Treaty provides,

>> If the criminal offender shall have been convicted of the criminal offense for which his extradition is asked, a copy of the sentence of the court before which such conviction took place, duly authenticated, shall be produced. If, however, the criminal offender is merely charged with crime, a duly authenticated copy of the warrant of arrest in the State where the crime was committed, and of the depositions upon which such warrant may have been issued, shall be produced, with such other evidence or proof as may be deemed competent in the case.

> (ECF No. 1 at 131.) The Treaty itself provides that a copy of the sentence of the court before which the conviction took place is all that is required to be produced.

> Blasko further relies on In Matter of Extradition of Ernst, No. 97 CRIM.MISC.1 PG.22,1998 WL 395267 (S.D.N.Y. July 14, 1998), to argue that additional evidence is needed because the judgment itself is not sufficient to meet the probable cause standard. In Ernst, the requesting state provided a decision rendered by the Zurich Supreme Court that did not describe the evidence upon which the decision was based. In Matter of Extradition of Ernst, 1998 WL 395267, at *10. Because the decision did not describe the evidence that the decision relied on, the court found it impossible to determine the veracity and

bases of knowledge upon which the decision was based. Id. However, that is not the case here, where as addressed below, the court set out a detailed summary of the evidence relied upon in coming to judgment.

(Memo. Cert. Extraditability at 14-15.)

Here, the requesting nation provided the judgment of the court before which Petitioner was convicted and an authenticated copy of the arrest warrant in the state where the crime was committed. The treaty itself and United States law only requires that the documents be properly authenticated, Zanazanian, 729 F.2d at 627, and Petitioner here has not argued that the documents were not properly authenticated.

Petitioner challenges that the summaries of the reported statements given by the witnesses were read into the record and contends they are not competent evidence. Such hearsay evidence is competent evidence upon which this court properly relied in determining whether the evidence was sufficient to establish probable cause to believe that Petitioner had committed the crimes alleged. In Emami, the petitioner made a similar argument that the Government had not submitted competent evidence in support of extradition because the evidence submitted was the witness statements as set forth in the prosecutor's declaration. Emami, 834 F.2d at 1451. The Ninth Circuit held that the hearsay statements of the witnesses were competent evidence in support of extradition. Id. at 1451-52.

Petitioner contends that this court relied on statements that lack sufficient evidence of reliability to constitute competent evidence upon which a finding of probable cause can be based. However, as evident from the record and as Petitioner concedes, the statements of the witnesses were read into the trial record. (See ECF No. 1 at 54 ("The testimonies of the witnesses the separate hearing of which the Court did not consider to be necessary were read at the main trial·upon the consent of the parties to the procedure in accordance with Art. 263 Sect. 1 Criminal Procedure Code.") Although Petitioner claims that these are summaries of the witness statements, the fact that the judgment contains summaries of the witness statements is not significant. Manta, 518 F.3d at 1147.

Further, while Petitioner argues that there is no evidence as to when the statements were provided or the purpose of these witness statements, review of the judgement itself shows that

there were several pretrial proceedings during which the witness statements were taken and that the witnesses confirmed their initial statements.  For example, the victim had statements from August 17, 2007 and April 24, 2009 read into the record and the court noted that at the April 24, 2009 hearing he persisted in his previous testimony.  (ECF No. 1 at 49-51.)  The witnesses at the trial were unable to remember specific events but persisted in their previous testimony explaining that any discrepancies were due to the lapse in time.  (ECF No. 52-53.)  Further, review of the other witness statements in the judgment confirms that Ing. Martina Kozmova, Patrik Foldesi, Jozef Ment, and Boris Skolak testified at a hearing in June 2009 and adhered to their previous testimony during the subsequent hearing.  (ECF No. 54-56, 60-62.)  The Court considered the extensive evidence set forth in the judgment in determining whether probable cause existed in this instance.  (Memo. Cert. Extraditability at 17-39.)  An evidentiary summary contained within the opinion of the court of the requesting state is within the scope of evidence that the extradition court may consider in making its limited preliminary decision under § 3184. Haxhiaj v. Hackman, 528 F.3d 282, 292 (4th Cir. 2008).

"Courts have long understood that the hearing before the extradition magistrate does not determine the guilt or innocence of the accused but rather represents a judgment whether there is competent evidence that would support a reasonable belief that the subject of the proceedings was guilty of the crimes charged."  Gill v. Imundi, 747 F.Supp.1028, 1038 (S.D.N.Y. 1990). Petitioner relies on United States v. Pena-Bencosme which stated that "a court must conduct an independent assessment of the evidence and closely examine the requesting country's submissions to ensure that any hearsay bears sufficient indicia of reliability to establish probable cause."  United States v. Pena-Bencosme, No. 05-M-1518 (SMG), 2006 WL 3290361, at *2 (E.D.N.Y. Nov. 13, 2006).  Further, since the finding of probable cause must be supported under federal or state law, Petitioner contends that the "affidavit must contain factual support for the affiant's conclusions and either an assertion that the affiant speaks from personal knowledge or a statement of the sources for the affiant's belief and the circumstances from which the affiant concluded that the sources were reliable and credible."  (ECF No. 6 at 19 citing Giordenello v. United States, 357 U.S. 480, 486 (1958).)  Petitioner contends that since the Government did not

provide the witness statements themselves the statements in the judgment of the Slovakian court do not provide a sufficient indicia of reliability to constitute probable cause upon which a finding of probable cause can be based.

In the order finding Petitioner to be extraditable, the court considered that the statements upon which the judgment was issued "were from the victim himself, witnesses who were present in the bar and seated or standing in close proximity to the incident describing what they observed and their relationship to the individuals involved. Review of the statements demonstrates that the witness statements were based on the observations by the witnesses of the incident itself and the witnesses had personal knowledge of the facts stated. The trial record itself demonstrates that the witnesses gave the statements during the investigation into the incident and confirmed the statements at the pretrial proceeding. (Memo. Cert. Extraditability at 17.) The witness statements contained in the judgment demonstrate that each witness was present at the incident and was able to hear and observe what occurred demonstrating that the witnesses spoke based on their personal knowledge of the incident. This is sufficient to find that the witness statements are competent evidence to support a finding of probable cause.

This court considered the witness statements and found,

the documents provided contain the statements of the victim himself and numerous witnesses who were present, observed the incident involving Blasko and Kozma, and gave consistent statements that Kozma was sitting with his hands on the table at the time that Blasko attacked him and had done nothing to warrant the attack. Kozma himself stated that he was merely questioning why they were taking Peli away and offered his identification documents at which time Blasko hit him in the face and knocked him to the ground. Kozma stated that Blasko continued to hit him in the head and face while Kozma was on the ground.

Peli, who was sitting at the same table as Kozma, stated that Kozma was calm when the policeman arrived and did not say anything to provoke the attack. He stated that Kozma did not raise his hand or gesture to the officers. The only movement by Kozma was to remove his identification card from his pocket and that his hands otherwise stayed on the table. Peli stated that after the policeman pulled Kozma onto the ground he was kneeling on Kozma and beating him with his fists.

There are also the statements of the other individuals sitting at the tables on the terrace or who were in the vicinity when the alleged beating occurred. Foldesi, Ladislav Peli, Brath, Kasolova, Barcsa, Ment, [and] Skolak stated that they were sitting at the next table and could see what was occurring. Sovis testified that he saw the officers at Kozma's table and Kozma was calmly communicating with the officer. Foldesi and Ment were standing and had an unobstructed view of the

incident. Ldislav Peli was sitting behind Kozma's table. Balkova stated that she was in front of the bar and became interested when the policemen arrived so she stood up and went to look at the terrace.

Foldesi, Ldislav Peli, Brath, Kaslova, Barcsa, Ment, Skolak, and Balkova stated that Kozma was calmly asking the officer why he wanted to take Peli away. Sovis thought the policeman was trying to get Kozma to go with him. Foldesi, Ldislav Peli, Brath, Kasolova, Ment, Skolak, and Balkova stated that Kozma had put his identification documents on the table and did not raise his hand to the officer. Foldesi, Ldislav Peli, Brath, Kasolovam, Barcsa, Ment, Skolak, Sovis, and Balkova stated that they saw the policeman hitting Kozma in the head and face with his fist. Foldesi, Ldislav Peli, Brath, Kasolova, Barcsa, Skolak, and Balkova stated that Kozma did not resist the office nor was he trying to defend himself but was covering his face during the beating.

Jana Balkova testified at the trial that after Kozma was beaten by the police, she and a group of others went to the police [station] to make a statement because that is what you do when you see the police beat someone.

Once they were at the police station, Kozma stated that Blasko hit him the face again and after Kozma fell to the ground he was beaten in the head and kicked. Then, Blasko stepped on his head and said it was finished. Peli stated that they took Kozma to a different room and when they brought him back to the corridor Kozma looked like he had been beaten.

Ing. Martina Kozmova stated in the pretrial proceeding that when she went to the police station she saw that Kozma had been beaten. As he was speaking to her, a policeman came up and grabbed Kozma by the clothing, lifted Kozma up with his foot and kicked him back into the cage. Based on the officer's statement that her husband was a prison warder and that he had almost broken his back on a table she later determined that he was the officer involved in beating Kozma at the bar.

Vladimir Chovanec testified during the trial that he was working that night and that he was told to take Kozma to the hospital for examination. Kozma was squirming on the ground in the cage where he had been beaten.

Additionally, Foldesi, Ladislav Peli, Barcsa, Skolak, Sovis, [and] Balkova stated that they knew Kozma from the village or bar but they are not friends.

Finally, the medical evidence demonstrates that Kozma had injuries consistent with blunt force trauma and that the injuries could have resulted from the conduct that he described.

(Memo. Cert. Extraditability at 45-46.) "Here, unlike the wholly conclusory judgment provided in In re Ribaudo, the requesting nation has provided more than the mere fact of conviction and the sentence that was imposed. The judgment itself is an extensive recitation of the evidence that was considered and contains the testimony and statements of twenty witnesses and other documentary evidence that was considered during the trial of the matter." (Id. at 16.)

Petitioner argues that three of the witnesses provided statements that were favorable to

him.  However, "the magistrate does not weigh conflicting evidence and make factual determinations but, rather, determines only whether there is competent evidence to support the belief that the accused has committed the charged offense."  Quinn, 783 F.2d at 815.  Here, this court found that there were competent witness statements to support a finding of probable cause and the fact that three of the witnesses provided statements that were favorable to Petitioner does not contradict that finding.

The Court also notes that those three statements were provided by the other officer who participated in the assault on the victim and the two complaining witnesses who were reported to have stated that they were going to make sure that the men who were involved in the confrontation with them were sent to prison with one of the complaining witnesses being a school friend of Petitioner's.  If the Court were to weigh the credibility of the statements provided, the fact that the three witnesses who provided statements favorable to Petitioner had a relationship with him and/or had a motive to incriminate the victim would weigh against finding them credible.  Conversely, many of the witnesses who gave statements adverse to Petitioner had no relationship with either party to the incident and have no apparent reason to lie.  Additionally, on the night of the incident several of these witnesses went to the police station to report what they had observed.  (Memo. Cert. Extraditability at 1-2.)  At the trial Jana Balkova testified that after the victim was beaten by Petitioner, she and a group of others went to the police station to make a statement because that is what you do when you see the police beat someone.  (Id. at 45-46.)

To the extent that Petitioner argues that the proceedings in Slovakia were "riddled with procedural irregularities," such issues are beyond the limited review of this Court and are reserved for the Secretary of State.  Santos, 830 F.3d at 1039-40; Haxhiaj, 528 F.3d at 290; In re Extradition of Camelo-Grillo, No. CV 16-9026 JVS (SS), 2017 WL 2945715, at *9 (C.D. Cal. July 10, 2017).

The statements of the witnesses who were present and observed the incident involving Petitioner that are set forth in the judgment are sufficient for the Court to determine the basis upon with the judgment was based and that evidence exists to support the judgment.  There is

competent evidence to support the conclusion that there was probable cause to believe the petitioner guilty.

## IV.

## RECOMMENDATION

For the foregoing reasons, IT IS HEREBY RECOMMENDED that Petitioner's petition for a writ of habeas corpus be DENIED.

This findings and recommendations is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within fourteen (14) days of service of this recommendation, any party may file written objections to this findings and recommendations with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:  __**March 7, 2019**__

UNITED STATES MAGISTRATE JUDGE