1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   VLADIMIR BLASKO,                          No.  1:18-cv-01649-DAD-SAB (HC)

12                    Petitioner,

13        v.                                    ORDER ADOPTING RECOMMENDATION
                                                AND DENYING PETITION FOR WRIT OF
14   LASHA BOYDEN, Acting United States         HABEAS CORPUS
     Marshal for the Eastern District of
15   California,[1]                             (Doc. Nos. 10, 11, 12)

16                    Respondent.

17

18                                **INTRODUCTION**

19        On November 30, 2018, petitioner Vladimir Blasko filed a petition for a writ of habeas

20   corpus pursuant to 28 U.S.C. § 2241 seeking review of the assigned magistrate judge's November

21   19, 2018 order in *In the Matter of the Extradition of Vladimir Blasko*, No. 1:17-mc-00067-DAD-

22   SAB (E.D. Cal.) (hereinafter cited as "17-mc-00067") certifying petitioner's extraditability to the

23   Slovak Republic.  (Doc. No. 1.)  The petition was referred to a United States Magistrate Judge

24   pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.  (Doc. No. 5.)

25   /////

26

27   _____

     [1]  On February 11, 2020, Lasha Boyden was sworn in as the Acting United States Marshal for the
     Eastern District of California.  Accordingly, the Clerk of the Court is directed to update the
28   docket to substitute in Acting Marshal Boyden as the respondent in this action.

                                           1

1    On March 7, 2019, the assigned magistrate judge issued findings and recommendations

2    recommending that the petition for a writ of habeas corpus be denied. (Doc. No. 10.)  Those

3    findings and recommendations were served on the parties and contained notice that any

4    objections thereto were to be filed within fourteen (14) days of service of the order. (*Id.* at 25.)

5    On March 21, 2019, petitioner filed objections to the findings and recommendations. (Doc. No.

6    11.)  Specifically, petitioner has objected only to the magistrate judge's findings that: (1)

7    petitioner's extradition is not barred by the applicable Slovakian statute of limitations; and (2) the

8    government has presented sufficient evidence to establish probable cause to believe that petitioner

9    committed the charged offenses. (*See id.* at 11, 26.)  On April 4, 2019, the government filed a

10   response to the objections. (Doc. No. 12.)

11   In accordance with the provisions of 28 U.S.C. § 636(b)(1)(C), this court has conducted a

12   *de novo* review of this case.  In prior orders issued by the undersigned the factual background of

13   the extradition request at issue here has been set out in great detail. (*See* 17-mc-00067, Doc. No.

14   45; *see also* Doc. No. 55.)  Not all of those facts need be repeated in full, but those set forth below

15   are deemed by the undersigned to be relevant for purposes of this order.

16                          **FACTUAL AND PROCEDURAL BACKGROUND**

17   Petitioner Blasko was a police officer in Nitra, Slovakia, from July 1, 2004 to October 20,

18   2009.  On the evening of July 13, 2007, Blasko and his police officer partner responded to a call

19   that two women had reported being harassed and slapped by men inside a bar.  Blasko and his

20   partner ultimately arrested two male patrons of the bar, Zoltan Peli and Boris Kozma, for

21   disorderly conduct and assault on a public official.  The same day, the District Directorate of

22   Police Corps filed criminal charges against Peli and Kozma.  On January 14, 2009, the charges

23   against Kozma were suspended.  However, on October 9, 2009, Peli was convicted of disorderly

24   conduct for his actions on the evening in question.  Many of the other details of what occurred on

25   July 13, 2007 and thereafter are the subject of varying degrees of dispute.

26   Blasko remained employed as a law enforcement officer in Slovakia after the bar room

27   incident until his termination over two years later on October 20, 2009.  Shortly thereafter, in

28   December 2009, Blasko married Martina Gregusova in Nitra, Slovakia, while Gregusova was

1    home on her winter break from college in the United States.  Ms. Gregusova had been enrolled at

2    Fresno Pacific University since January 22, 2009.  Following their wedding, Blasko applied for

3    and obtained a Slovakian passport and a United States F-1 student visa.  (Doc. No. 35-1, Ex. J.)

4    On January 27, 2010, Blasko was informed of his acceptance for admission to Fresno Pacific

5    University and contends that he so notified the police department in Nitra.  Thereafter, using his

6    Slovakian passport and student visa, Blasko departed Slovakia and arrived in the United States on

7    February 26, 2010.

8         On June 3, 2010[2], almost three years after the July 13, 2007 barroom incident, Blasko was

9    charged with abuse of power and misdemeanor infliction of bodily harm in violation of the

10   Slovakian Penal Code.  (*See* 17-mc-00067, Doc. No. 52-1 at 13-20.)  The charging document also

11   reported that at some unidentified time prior to its filing, "[t]he defendant, Senior Constable

12   Vladimir Blasko, excercised (sic) his right to remained (sic) silent as a person accused of a crime

13   and refused to comment on the matter."  (*Id*. at 17.)[3]  Over a year after the charging document

14   was issued, on June 9, 2011, the District Court in Nitra, Slovakia issued an international warrant

15   for Blasko's arrest, identifying his last known location as being Fresno Pacific University.  (*Id.*)

16        On February 15, 2012, U.S. Department of Homeland Security officers arrested Blasko at

17   his home in Fresno, for allegedly failing to maintain the conditions required by his non-immigrant

18   visa status in the United States.  At a March 6, 2012 immigration bond hearing, Blasko's

19   immigration attorney learned that Slovakia had issued the international arrest warrant.  On April

20   20, 2012, an asylum application was filed on Blasko's behalf seeking withholding of his removal.

21   On June 22, 2012, Blasko was released from U.S. Immigration custody on a $5,000 bond.

22   /////

23   _____

24   [2]  The charging documents was signed by a District Attorney for the Military branch of the
     Government on May 20, 2010, but the first page of that document reflects a presumed filing date
25   of June 3, 2010.  (*See* 17-mc-00067, Doc. No. 52-1 at 13, 20.)

26   [3]  By its reference to petitioner as "Senior Constable" this passage of the charging document may
     be read as suggesting that at the time he declined to comment petitioner was still a law
27   enforcement official, a position he ceased to hold as of October 20, 2009.  However, no date is
     provided as to when this attempt to interview petitioner took place, or for that matter when any of
28   the interviews referred to in the charging document occurred.

3

1   According to petitioner Blasko, it was not until June 10, 2015, that he learned that a trial[4]

2   on the criminal charges brought against him in June 2010 had been conducted in his absence by

3   the District Court in Nitra.  Specifically, a Slovakian criminal judgment was entered against

4   Blasko on April 15, 2013, and an appellate court decision dated November 7, 2013 had affirmed

5   the four year prison sentence imposed upon him *in abstentia*.  Although the Slovakian judgment

6   made reference to "the accused person's barrister," petitioner Blasko contends that he was never

7   aware of anyone acting on his behalf during these proceedings in Slovakia.

8   /////

9   _____

10  [4]  Petitioner's trial in Slovakia is referred to throughout the pleadings and the pending findings and recommendations.  However, the undersigned is compelled to note that the proceeding

11  referred to was not what those in this country would think of as a trial.  It is unclear from the documents submitted to this court when the proceeding even took place, though petitioner

12  contends that it may have commenced as early as December 5, 2012.  Although petitioner's counsel asserts that the number was fewer (Doc. No. 11 at 26), it appears from the submitted

13  documents that perhaps as many as fifteen witnesses, not all eyewitnesses, were relied upon by the prosecutors in Slovakia.  According to the prosecution's eyewitnesses, petitioner Blasko

14  assaulted the alleged victim Boris Kozma for no reason.  Three witnesses, including petitioner's partner on the police force and the two women who called police to complain that they had been

15  harassed and assaulted by men in the bar, all gave statements exonerating petitioner.  It was suggested by these latter witnesses, with some additional support, that:  Peli and Kozma had been

16  drinking; when the police arrived Kozma interfered with their attempt to take Peli into custody; and it was Kozma who started to attack petitioner Blasko, resulting in the use of force by

17  petitioner in response.  What the undersigned finds unusual is not the dispute over who was responsible for the fisticuffs, but the fact that it appears that no more than six witnesses appeared

18  at petitioner's trial *in abstentia*.  (*See* 17-mc-00067, Doc. No. 1 at 49-75.)  Rather, the majority of the witnesses relied upon by the prosecution merely had their earlier statements—given in July of

19  2007 or provided at some later pretrial proceeding—read at the trial.  Indeed, it is unclear whether these witnesses testified under oath, even though their statements have sometimes been referred

20  to as testimony.  Most importantly, it is not disputed that the alleged victim of the assault, Boris Kozma, actually refused to appear at, or participate in, petitioner's trial.  Instead, statements that

21  Kozma had given to investigators back on August 17, 2007 and April 24, 2009 were also merely read at trial, apparently as permitted by Slovakian law.  (*See* 17-mc-00067, Doc. No. 1 at 49–51.)

22  Petitioner's counsel refers to the "procedural irregularities" in the proceedings against petitioner in.  Whether one agrees with that characterization or not, petitioner's expressed concern with the

23  fairness of the proceedings—especially a trial *in abstentia* where he was "represented" by a barrister he had never spoken to—is certainly understandable.  The undersigned is aware that

24  some extradition treaties to which the United States is a party provide that under specified circumstances where one has been tried *in abstentia*, a new trial is to be made available to the

25  extraditee following extradition.  *See Einhorn v. Cameron*, No. 2:15-cv-2139, 2017 WL 7052177, at *8 (E.D. Pa. July 20, 2017), *findings and recommendations adopted* 2018 WL 558444 (E.D.

26  Pa. Jan. 24, 2018).

On January 21, 2014, the Slovakian government obtained another international warrant for Blasko's arrest. (*See* 17-mc-00067, Doc. No. 1 at 97–109.)  Over forty months thereafter, on June 6, 2017, the Embassy of the Slovak Republic in Washington, D.C. finally issued a formal Diplomatic Note to the United States Department of State requesting Blasko's international extradition and providing the documentation required by the treaty between the two countries. On October 2, 2017, the United States Attorney's Office for the Eastern District of California, representing the United States in fulfilling its extradition treaty obligations, filed a formal extradition complaint against Blasko, giving rise to these proceedings.

In light of this factual background, the undersigned continues to find this extradition request to be both somewhat unusual and at least arguably troubling.  Nonetheless, having carefully reviewed the entire file, including petitioner's specific objections and the government's response to those objections, the court concludes that the recommendation that petitioner's request for habeas relief be denied to be supported by the record and by proper analysis.[5]

The court will address petitioner's specific objections to the pending findings and recommendations in turn below.

**ANALYSIS**

**A.      Whether the Statute of Limitations for the Execution of Punishment Has Run**

The parties do not dispute that Article 90 of the Slovakian Criminal Code provides a five-year statute of limitations for the execution of punishment imposed with respect to the offenses for which petitioner's extradition is sought. (Doc. Nos. 11 at 11; 12 at 14.)  Subsection 3 of Article 90 provides, however, that "[t]he limitation period shall not include the period during

---

[5]  The undersigned apologizes for the excessive delay in the issuance of this order.  This court's overwhelming caseload has been well publicized and the long-standing lack of judicial resources in this district long-ago reached crisis proportion.  While that situation was partially addressed by the U.S. Senate's confirmation of a district judge for one of this court's vacancies on December 17, 2021, another vacancy on this court with only six authorized district judge positions was created on April 17, 2022.  For over twenty-two months the undersigned was left presiding over approximately 1,300 civil cases and criminal matters involving 735 defendants.  That situation resulted in the court not being able to issue orders in submitted matters within an acceptable period of time and continues even now as the undersigned works through the predictable backlog. This has been frustrating to the court, which fully realizes how incredibly frustrating it is to the parties and their counsel.

1   which the punishment could not be enforced because the convicted sojourned abroad with the

2   intent to avoid the punishment." (Doc. Nos. 11 at 12; 12 at 14.) It is the application of this

3   provision of Slovakian law that the undersigned believes poses the only potentially truly

4   debatable question with regard to petitioner's extradictability under the governing treaty.

5          Petitioner objects to the magistrate judge's finding that the Slovakian statute of limitations

6   for the execution of punishment in this case was tolled because petitioner sojourned abroad with

7   the intent to avoid prosecution. (Doc. No. 11 at 12.) Petitioner argues that the magistrate judge

8   erred by deferring to the "brief, self-serving, and conclusory" declaration of Slovakian Judge

9   Maria Ondrejova and in concluding that circumstantial evidence established that petitioner left

10  Slovakia with the intent to avoid punishment there. (*Id.*) In the undersigned's view, however,

11  this objection ultimately misses the mark.

12         In support of the request for petitioner's extradition, Slovakian Judge Ondrejova

13  submitted a declaration stating as follows:

> [T]he enforcement of the four-year sentence of imprisonment is not barred by the applicable statutes of limitations because Mr. Blasko sojourned abroad with the intent to avoid the punishment. Article 90(3) of the Criminal Code of the Slovak Republic states as follows: "The limitation period shall not include the period during which the punishment could not be enforced because the convicted sojourned abroad with the intent to avoid the punishment, or they were serving punishment by prison sentence during it." The fact that Mr. Blasko has been fighting against his extradition, after being arrested in October 2017, confirms that he has known about the judgment and that he has sojourned abroad with the intent to avoid punishment under Article 90(3) of the Criminal Code of the Slovak Republic.

21  (17-mc-00067, Doc. No. 52-1 at 4.) The magistrate judge relied upon Judge Ondrejova's

22  conclusion that the Slovakian statute of limitations was tolled. (*See* Doc. No. 10 at 10); *see also*

23  17-mc-00067, Doc. No. 56 at 50–51.)

24         It is well-established that an extradition court should normally refrain from second-

25  guessing another country's interpretation of its own statute of limitations. *See Fejfar v. United*

26  *States*, 724 Fed. App'x 621, 622 (9th Cir. 2018)[6] (acknowledging the Constitutional Court of the

---

[6] Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).

1    Czech Republic's holding that petitioner's sentence was not statute-barred and noting that

2    "[j]udicial inquiry into foreign criminal procedural issues is limited in the extradition context");

3    *Skaftourous v. United States*, 667 F.3d 144, 161, 162 n.22 (2d Cir. 2011) (relying on letter from

4    Public Prosecutor of the Court of Appeals of Athens stating that the applicable statute of

5    limitations had been tolled, and noting that "[petitioner]'s argument relates to the *Greek* statute of

6    limitations, and is therefore not only available for him to make before the Greek courts, but is

7    most properly raised in that forum").

8          Petitioner argues that the decisions in *Fejfar* and *Skaftourous* are distinguishable because

9    in *Fejfar* the statute of limitations issue had already been litigated in the foreign court, while in

10   *Skaftourous* the foreign court's interpretation was not dispositive of the legal issue posed by the

11   statute of limitations because that issue was resolved by a factual determination.  (*See* Doc. No.

12   11 at 20–21.)  Petitioner also attempts to distinguish numerous other cases relied upon in the

13   pending findings and recommendations in which courts of the United States have deferred to a

14   foreign official's interpretation of their own laws, arguing that in those cases, the extradition court

15   merely relied on documents from the requesting country that corrected clerical issues regarding

16   the statute of limitations, or that the requesting country provided detailed explanations for their

17   conclusions.  (*See id.* at 20–22.)  Petitioner has provided no authority, however, in support of the

18   notion that the distinctions he has drawn make any difference.  At bottom, petitioner has simply

19   failed to present any legal support that would justify a departure from the longstanding principle

20   that American courts should "decline[] to rule on the procedural requirements of foreign law out

21   of respect for other nations' sovereignty and because we recognize the chance of erroneous

22   interpretation is much greater when we try to construe the law of a country whose legal system is

23   not based on common law principles."  *Sainez v. Venables*, 588 F.3d 713, 717 (9th Cir. 2009)

24   (quoting *Emami v. United States Dist. Court*, 834 F.2d 1444, 1449 (9th Cir. 1987)).

25         Petitioner also argues that in the order of extradictability the magistrate judge deferred

26   "wholesale" (Doc. No. 11 at 22) to the declaration of Slovakian Judge Ondrejova in concluding

27   that the statute of limitations for the enforcement of the sentence imposed upon petitioner in that

28   country had been tolled.  The undersigned does not agree.  Here, the magistrate judge also

considered:  whether the evidence supported a finding that petitioner had resisted his extradition after being made aware of the judgment entered against him in Slovakia; the factual record; a plain reading of the applicable Slovakian statute; and the purpose of statute of limitations tolling provisions in general.  (*See* Doc. No. 10 at 11–15.)  The magistrate judge considered, for example, that petitioner had conceded that he became aware of his *in abstentia* conviction in June 2015 and has been contesting his extradition since his initial appearance in these proceedings on October 16, 2017.  (*Id.* at 14.)   In his objections to the pending findings and recommendations petitioner argues that there is absolutely no evidence before this court that petitioner attempted to flee or to conceal his location.  (*See* Doc. No. 11 at 23.)  The undersigned agrees wholeheartedly with petitioner in this regard.  However, petitioner has not presented any authority that such actions are required in order to support a finding that he "sojourned abroad with the intent to avoid the punishment" thereby tolling the five year statute of limitations for enforcement under Slovakian law.

The pending findings and recommendations point out that the dictionary definition of the word "sojourn" is to stay somewhere as a temporary resident or to stay at one place while travelling or for a short period.  (Doc. No. 10 at 13–14.)  The findings and recommendations also conclude that there was sufficient evidence before the extradition court essentially establishing that once Slovakia formally sought his extradition from the United States, petitioner stayed in this country and resisted extradition, thereby tolling the five year statute of limitations for enforcement of his sentence in Slovakia during that time.  (*Id.* at 14–15.)  The undersigned finds no basis upon which to reject that finding and the recommendation based upon that finding that relief be denied as to petitioner's statute of limitations argument.[7]

Finally, the findings and recommendations considered that the purpose of the tolling provision in this context is to protect, under the treaty in question, the rights of both the petitioner to raise claims challenging extradition and of the country requesting petitioner's extradition.  (*Id.*

---

[7]  Put another way, petitioner has failed to present any authority for the proposition that the fact he did not flee or take steps in the United States to conceal his whereabouts has any bearing on the resolution of the Slovakian statute of limitations issue presented here.

at 14.)  The magistrate judge concluded that the tolling provision seeks to avoid the incongruous result in which an extraditee could avoid extradition simply by continuing an extradition hearing until the applicable statute of limitations had run out.  (*Id.*)[8]

Petitioner further argues that it is the responsibility of the requesting country to timely seek extradition so as to avoid a situation where the statute of limitations would run during the pendency of the extradition proceedings.  (Doc. No. 11 at 25.)  As discussed in the pending findings and recommendations, however, it is simply not this extradition court's prerogative to assess the investigative, judicial, and penal systems of foreign nations or any delay on their part in seeking extradition when reviewing an extradition request.  *See Choe v. Torres*, 525 F.3d 733, 741 (9th Cir. 2008) (rejecting petitioner's argument against tolling of statute of limitations on the ground that the requesting country delayed seeking extradition for four years, concluding that, "[t]o the extent there was a delay, this is a matter left for the Secretary of State's consideration"); *Kamrin v. United States*, 725 F.2d 1225, 1227 (9th Cir. 1984) ("When the United States is the requested country, delay in seeking extradition may be relevant to the Secretary of State's final determination as to whether extradition may go forward.  The delay may not, however, serve as a defense to judicial extradition proceedings.") (citation omitted).

The court pauses to observe that to some extent in their briefing addressing this question, the parties have focused upon issues which the undersigned finds to be largely irrelevant to resolution of whether the applicable statute of limitations bars petitioner's extradition under the governing treaty.  In the end, the determination is a fairly straightforward one.  A Slovakian criminal judgment and four year prison sentence was entered against petitioner Blasko on April

---

[8]  It is the case that petitioner requested continuances of his extradition hearing in order to conduct further investigation, in October 2017, December 2017, and February 2018.  (*See* 17-mc-00067, Doc. Nos. 14, 15, 30.)  It is also the case that petitioner made explicit that he intended to challenge the government's showing of probable cause in support of extradition, and that additional investigation was "necessary and central to the defense's efforts to undermine the government's probable cause presentation."  (*Id.*, Doc. No. 35 at 35.)  Petitioner objects that this does not constitute evidence that he was "fighting" his extradition.  (Doc. No. 11 at 25.)  The court understands petitioner's objection in this regard—he was entitled to challenge the propriety of his extradition under the treaty.  However, for the reasons explained above, that fact does not alter the court's resolution of petitioner's statute of limitations based claim.

1    15, 2013.  This is the earliest that the applicable five-year statute of limitations for imposing

2    liability to punishment under Slovakian law could have begun to run.[9]  On June 6, 2017, the

3    Slovak Republic requested petitioner Blasko's international extradition and provided the

4    documentation required by the applicable treaty and on October 2, 2017, the United States filed

5    the formal extradition complaint against him.  Even as of the latter of these two dates, the five

6    year statute of limitations for the enforcement of or liability to the four year punishment imposed

7    in Slovakia had not expired.  Moreover, as of October 2, 2017, petitioner Blasko had clearly

8    sojourned to the United States and was expressing an intent to avoid that punishment by resisting

9    extradition under the applicable treaty, as he was entitled to do.  Nonetheless, since at least

10   October 2, 2017, the five year statute of limitations has been tolled under Slovakian law and has

11   not recommenced running.

12        In short, the conclusion reached in the findings and recommendations that the applicable

13   statute of limitations has been tolled during the pendency of this extradition proceeding is, in the

14   undersigned's view, correct and will be adopted.

15   **B.    Whether There Is Competent Evidence to Establish Probable Cause**

16        "When reviewing a magistrate's finding of probable cause in an extradition proceeding,

17   the court examines the record to see whether there was competent evidence to support the

18   conclusion that there was probable cause to believe the petitioner guilty."  *Zanazanian v. United*

19   *States*, 729 F.2d 624, 626 (9th Cir. 1984); *see also Sainez*, 588 F.3d at 717 ("Because the

20   magistrate's probable cause finding is . . . not a finding of fact in the sense that the court has

21   weighed the evidence and resolved disputed factual issues, it must be upheld if there is any

22   competent evidence in the record to support it.") (citation omitted).

23        Petitioner contends that in making the probable cause determination the magistrate judge

24   erred in relying on statements that lack sufficient indicia of reliability to constitute competent

25   evidence.  (Doc. No. 11 at 26.)  Specifically, petitioner challenges the summaries of reported

26

27   _____

     [9]  Although neither party has so argued, the conceivable alternative commencement date of the
     statute of limitations would have been November 7, 2013, when petitioner's sentence was
28   affirmed on appeal by the Slovakian court.

1    statements of eyewitnesses that were read into the record at petitioner's trial *in abstentia*, not

2    given under oath, and not subjected to cross-examination.  (*Id.* at 26–27.)

3           Petitioner has provided no authority, however, that the evidence relied upon was

4    incompetent in this extradition context.  It is well-established that "[t]he usual rules of evidence

5    do not apply in extradition hearings and, unless the relevant treaty provides otherwise, the only

6    requirement for evidence is that it has been authenticated."  *Manta v. Chertoff*, 518 F.3d 1134,

7    1146 (9th Cir. 2008) (citations omitted).  Petitioner has presented no persuasive argument that the

8    evidence relied upon by the magistrate judge here in making the probable cause determination

9    was not authenticated.  Moreover, it is also well-settled that hearsay and other unsworn

10   statements are admissible in an extradition hearing.  *See Emami v. U.S. Dist. Court for the N.

11   Dist. of Cal.*, 834 F.2d 1444, 1451 (9th Cir. 1987) ("In the Ninth Circuit it has been repeatedly

12   held that hearsay evidence that would be inadmissible for other purposes is admissible in

13   extradition proceedings."); *Zanazanian*, 729 F.2d at 627 (overruling the petitioner's objection to

14   reliance on unsworn statements, noting that "[n]either the applicable treaty nor United States law

15   requires that evidence offered for extradition purposes be made under oath").  Indeed, there is no

16   right to cross-examination of witnesses in an extradition hearing.  *Oen Yin-Choy v. Robinson*, 858

17   F.2d 1400, 1406–07 (9th Cir. 1988) ("[A]n extradition hearing is not the occasion for an

18   adjudication of guilt or innocence.  The evidentiary rules of criminal litigation are not applicable.

19   As in the case of a grand jury proceeding, a defendant has no right to cross-examine witnesses or

20   introduce evidence to rebut that of the prosecutor.") (citations omitted) (quoting *Messina v.

21   United States*, 728 F.2d 77, 80 (2d Cir. 1984)).  Petitioner's objections in this regard are therefore

22   unavailing.

23          Here, the magistrate judge found that the evidence was sufficient to establish probable

24   cause to believe the petitioner had committed the charged offenses.  (Doc. No. 10 at 15–16)

25   (citing *Zanazanian*, 729 F.3d at 626).  That finding was based upon the requesting nation

26   providing the judgment of the court before which petitioner was convicted and an authenticated

27   copy of the arrest warrant in the state where the crime was committed.  (Doc. No. 10 at 20.)  The

28   magistrate judge observed that a probable cause finding may be based on a foreign judgment of

1    conviction, and that the governing treaty here does not distinguish between an *in absentia*

2    conviction and a conviction where the individual was present at trial.  (*Id.* at 18–19.)  Even if the

3    *in absentia* conviction is insufficient on its own to establish the required probable cause (*see In*

4    *re Extradition of Ferriolo*, 126 F. Supp. 3d 1197, 1300 (M.D. Fla. 2015) ("When a person is

5    convicted *in absentia*, the judgment is treated as a charge, not a conviction.")), here the

6    magistrate judge also considered that the judgment in question set forth "an extensive recitation

7    of the evidence that was considered and contains the testimony and statements of twenty

8    witnesses and other documentary evidence that was considered during the trial of the matter."

9    (Doc. No. 10 at 19.)  Many of those witnesses, including the alleged victim and other bar patrons

10   who were present at the bar, provided statements during the initial investigation and/or at a

11   pretrial proceedings implicating petitioner as the aggressor.  (*Id.* at 22.)  In light of this record, the

12   magistrate judge cannot be said to have erred in finding that the evidence presented in this

13   extradition proceeding was sufficient to establish probable cause.  *See Sainez*, 588 F.3d at 717

14   (holding that magistrate judge's probable cause finding "must be upheld if there is *any competent*

15   *evidence* in the record to support it") (emphasis added).  Even though others identified Kozma as

16   the aggressor and exculpated petitioner, it simply cannot be persuasively argued that the probable

17   cause finding here was unsupported by the evidence.

18          Finally, petitioner objects on the ground that the Slovakian proceedings were "riddled

19   with procedural irregularities."  (Doc. No. 11 at 29.)   The undersigned has expressed his views

20   regarding the unusual background of this extradition request.  *See* fn. 4, above.  Nonetheless, and

21   as the magistrate judge properly found, such issues are matters reserved for the consideration of

22   the Secretary of State and are beyond the limited scope of this court's review.  *See Haxhiaj v.*

23   *Hackman*, 528 F.3d 282, 290 (4th Cir. 2008) ("[Q]uestions about the procedural fairness of

24   another sovereign's justice system . . . are within the purview of the executive branch, as are

25   questions about whether the requesting country is sincere in its demand for extradition or is

26   merely using the process as a subterfuge.") (citation and quotation marks omitted); *In re*

27   *Extradition of Camelo-Grillo*, No. 2:16-cv-9026-JVS-SS, 2017 WL 2945715, at *9 (C.D. Cal.

28   July 10, 2017) ("Questions about the 'procedural fairness' or 'competence' of the foreign

1   sovereign's justice system are matters for the executive branch, not the courts, to consider in

2   extradition proceedings.").

3        Accordingly, petitioner's challenge to the pending findings and recommendations with

4   respect to the probable cause determination must also be rejected.

5                                    **CONCLUSION**

6        For the reasons set forth above,

7        1.  The findings and recommendations issued March 7, 2019 (Doc. No. 10) are

8            adopted as indicated;

9        2.  Petitioner's petition for a writ of habeas corpus (Doc. No. 1) is denied; and

10       3.  The Clerk of the Court is directed to enter judgment in favor of the respondent and

11           to close this case.

12  IT IS SO ORDERED.

13  Dated:   **May 15, 2022**

14                                    UNITED STATES DISTRICT JUDGE

15

16

17

18

19

20

21

22

23

24

25

26

27

28