UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VLADIMIR BLASKO, | No. 1:18-cv-01649-DAD-SAB (HC) |
| Petitioner, | |
| v. | <u>ORDER GRANTING MOTION TO STAY EXTRADITION PENDING APPEAL</u> |
| LASHA BOYDEN, Acting United States Marshal for the Eastern District of California, | (Doc. No. 24) |
| Respondent. | |

This matter is before the court on petitioner Vladimir Blasko's motion seeking a stay of extradition pending appeal of the court's May 16, 2022 order denying his petition for a writ of habeas corpus. (Doc. No. 24.) For the reasons explained below, the court will grant petitioner's motion.

**A.   FACTUAL BACKGROUND**

As the court noted in its previous order adopting the then-pending findings and recommendations and denying petitioner's petition for a writ of habeas corpus, in prior orders the undersigned has set out in great detail the factual background of this extradition case. (Doc. No. 16 at 2.) Not all of those facts need be repeated in full here. Nevertheless, as the court did in its order adopting the findings and recommendations, it will repeat here only the facts deemed to be

1

1 relevant for the purposes of resolving the pending motion to stay this action pending appeal.  (*See*
2 *id.*)

3 Petitioner Blasko was a police officer in Nitra, Slovakia, from July 1, 2004 to October 20,
4 2009.  On the evening of July 13, 2007, Blasko and his police officer partner responded to a call
5 that two women had reported being harassed and slapped by men inside a bar.  Blasko and his
6 partner ultimately arrested two male patrons of the bar, Zoltan Peli and Boris Kozma, for
7 disorderly conduct and assault on a public official.  The same day, the District Directorate of
8 Police Corps filed criminal charges against Peli and Kozma.  On January 14, 2009, the charges
9 against Kozma were suspended.  However, on October 9, 2009, Peli was convicted of disorderly
10 conduct in connection with his actions on the evening in question.  Many of the other details of
11 what occurred on July 13, 2007 and thereafter are the subject of varying degrees of dispute.  (*See*
12 Doc. No. 16 at 4 n.4.)

13 Blasko remained employed as a law enforcement officer in Slovakia after the bar room
14 incident until his termination over two years later on October 20, 2009.  Shortly thereafter, in
15 December 2009, Blasko married Martina Gregusova in Nitra, Slovakia, while Gregusova was
16 home in Slovakia on her winter break from college in the United States.  Ms. Gregusova had been
17 enrolled at Fresno Pacific University since January 22, 2009.  Following their wedding, Blasko
18 applied for and obtained a Slovakian passport and a United States F-1 student visa.  On January
19 27, 2010, Blasko was informed of his acceptance for admission to Fresno Pacific University and
20 contends that he so notified the police department in Nitra.  Thereafter, using his Slovakian
21 passport and student visa, Blasko departed Slovakia and arrived in the United States on February
22 26, 2010.

23 On June 3, 2010[1], almost three years after the July 13, 2007 barroom incident, Blasko was
24 charged with abuse of power and misdemeanor infliction of bodily harm in violation of the
25 Slovakian Penal Code.  (*See* 17-mc-00067, Doc. No. 52-1 at 13-20.)  The charging document also

---

[1] The charging document was signed by a District Attorney for the Military branch of the Government on May 20, 2010, but the first page of that document reflects a presumed filing date of June 3, 2010.  (*See In the Matter of the Extradition of Vladimir Blasko*, No. 1:17-mc-00067-DAD-SAB (E.D. Cal.) (hereinafter cited as "17-mc-00067"), Doc. No. 52-1 at 13, 20.)

reported that at some unidentified time prior to its filing, "[t]he defendant, Senior Constable Vladimir Blasko, excercised (sic) his right to remained (sic) silent as a person accused of a crime and refused to comment on the matter." (*Id.* at 17.) Over a year after the charging document was issued, on June 9, 2011, the District Court in Nitra, Slovakia issued an international warrant for Blasko's arrest, identifying his last known location as being Fresno Pacific University. (*Id.*)

On February 15, 2012, U.S. Department of Homeland Security officers arrested Blasko at his home in Fresno, for allegedly failing to maintain the conditions required by his non-immigrant visa status in the United States. At a March 6, 2012 immigration bond hearing, Blasko's immigration attorney learned that Slovakia had issued the international arrest warrant. On April 20, 2012, an asylum application was filed on Blasko's behalf seeking withholding of his removal. On June 22, 2012, Blasko was released from U.S. Immigration custody on a $5,000 bond.

According to petitioner Blasko, it was not until June 10, 2015, that he learned that a trial on the criminal charges brought against him in June 2010 had been conducted in his absence by the District Court in Nitra, Slovakia. Specifically, a Slovakian criminal judgment was entered against Blasko on April 15, 2013, and an appellate court decision dated November 7, 2013 had affirmed the four year prison sentence which had been imposed upon him *in abstentia*. Although the Slovakian judgment made reference to "the accused person's barrister," petitioner Blasko contends that he was never aware of anyone acting on his behalf during these proceedings in Slovakia.

On January 21, 2014, the Slovakian government obtained another international warrant for Blasko's arrest. (*See* 17-mc-00067, Doc. No. 1 at 97–109.) Over forty months thereafter, on June 6, 2017, the Embassy of the Slovak Republic in Washington, D.C. finally issued a formal Diplomatic Note to the United States Department of State requesting Blasko's international extradition and providing the documentation required by the treaty between the two countries. On October 2, 2017, the United States Attorney's Office for the Eastern District of California, representing the United States in fulfilling its extradition treaty obligations, filed a formal extradition complaint against Blasko, giving rise to these proceedings.

/////

B.     **PROCEDURAL BACKGROUND**

On November 30, 2018, Blasko filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 seeking review of the assigned magistrate judge's November 19, 2018 order certifying petitioner's extraditability to the Slovak Republic. (17-mc-00067, Doc. No. 1.) The petition was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302. (Doc. No. 5.) On March 7, 2019, the assigned magistrate judge issued findings and recommendations, recommending that the petition for a writ of habeas corpus be denied. (Doc. No. 10.) Petitioner objected to those findings and recommendations. (Doc. No. 11.) Specifically, petitioner objected to the magistrate judge's findings that: (1) petitioner's extradition was not barred by the applicable Slovakian statute of limitations; and (2) the government had presented sufficient evidence to establish probable cause to believe that petitioner committed the charged offenses. (*See id.* at 11, 26.) The undersigned conducted a *de novo* review of the case pursuant to 28 U.S.C. § 636(b)(1)(C). (Doc. No. 16.) Notwithstanding the court's reservations that it found the extradition request to be "both somewhat unusual and at least arguably troubling," the undersigned concluded that "the recommendation that petitioner's request for habeas relief be denied" was supported by the record and by proper analysis. (*Id.* at 5.)

On May 27, 2022, petitioner Blasko filed a notice of appeal of the court's order denying his petition for a writ of habeas corpus. (*See* Doc. No. 18.) Thereafter, petitioner filed a motion with this court seeking a stay of his extradition while he pursues his appeal to the Ninth Circuit. (Doc. No. 24.) The United States has opposed that motion (Doc. No. 25) and petitioner has filed a reply in support of his request for a stay (Doc. No. 26.)

## LEGAL STANDARD

"A stay is not a matter of right, even if irreparable injury might otherwise result." *Nken v. Holder*, 556 U.S. 418, 433 (2009). "It is instead an exercise of judicial discretion, and the propriety of its issue is dependent upon the circumstances of the particular case." *Id.* (internal quotation and brackets omitted). "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Id.* at 433–34.

4

In exercising discretion to grant or deny a stay, courts should consider the following factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.* at 434 (citation omitted). The Ninth Circuit has held that courts should apply these factors flexibly when analyzing stay requests. *See Leiva-Perez v. Holder*, 640 F.3d 962, 966 (9th Cir. 2011) (reasoning, in part, that "stays are typically less coercive and less disruptive than are injunctions").

To apply the factors flexibly, courts employ a "sliding scale," meaning that the factors are balanced so that "a stronger showing of one element may offset a weaker showing of another." *Id.* at 964–66 (quoting in part *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011)); *Kum Tat Ltd. v. Linden Ox Pasture, LLC*, No. 3:14-cv-02857-WHO, 2015 WL 674962, at *2 (N.D. Cal. Feb. 17, 2015). Under this sliding scale approach,

> a moving party who cannot show a strong likelihood of success on the merits may nonetheless be entitled to a stay where he shows that his appeal "raises serious legal questions, or has a reasonable probability or fair prospect of success." *Leiva-Perez*, 640 F.3d at 971. A party satisfying this lower threshold under the first *Nken* factor is not required to show that it is more likely than not to win on the merits, but it must demonstrate that the balance of hardships under the second and third factors tilts sharply in its favor.

*Kum Tat*, 2015 WL 674962, at *2 (cleaned up).

Against this backdrop, the Ninth Circuit has condensed the four factors from *Nken* and held that a stay of removal in the immigration context, for instance, is warranted if the petitioner establishes that "irreparable harm is probable and either: (a) a strong likelihood of success on the merits and that the public interest does not weigh heavily against a stay; or (b) a substantial case on the merits and the balance of hardships tips sharply in the petitioner's favor." *Leiva-Perez*, 640 F.3d at 970; *see also Luna v. O'Keefe*, No. 5:17-cv-02129-LHK, 2018 WL 2197555, at *1 (N.D. Cal. May 14, 2018) (applying the same standards to a request for a stay after a habeas petition challenging an extradition order was denied and appealed).

/////

5

**DISCUSSION**

Petitioner argues that absent a stay, he will be subject to extradition from the United States to Slovakia. (Doc. No. 24 at 4.) According to petitioner, extraditing him at this time, while his appeal is pending, "would divest this Court, and all courts in the United States, of jurisdiction and would render Mr. Blasko's appeal moot." (*Id.*) (citing *Artukovic v. Rison*, 784 F.2d 1354, 1356 (9th Cir. 1986)). Therefore, petitioner contends that "because the failure to grant a stay would result in irreparable harm to Mr. Blasko, his appeal rases serious legal questions, and the balance of hardships tip sharply in his favor, a stay should be granted in this case." (*Id.*)

### A. Irreparable Injury

Petitioner has shown a strong likelihood of irreparable harm were the court to deny his motion to stay because if the court denies the pending motion and the government extradites petitioner to Slovakia, his appeal will be rendered moot and this challenge will be dismissed. *See Artukovic*, 784 F.2d at 1356 (finding that a petitioner satisfied the irreparable harm factor because if the petitioner's stay motion was denied, the petitioner's appeal will become moot and will be dismissed since [the petitioner's] extradition will have been carried out"); *see also Luna*, 2018 WL 2197555, at *1 (finding that the petitioner demonstrated irreparable harm because "if the court denies Petitioner's stay motion and the government extradites Petitioner to Mexico, Petitioner's appeal will become moot").

Accordingly, the court now turns to consider the other relevant factors in determining whether a stay should be granted.

### B. Likelihood of Success on the Merits

Under the Ninth Circuit's decision in *Leiva-Perez*, petitioner must, at a minimum, demonstrate "a substantial case for relief on the merits" in order to establish grounds for the granting of a stay. 640 F.3d at 968 ("Regardless of how one expresses the requirement, the idea is that in order to justify a stay, a petitioner must show, at a minimum, that she has substantial case for relief on the merits."). To satisfy this standard, "a mere possibility of relief" is insufficient, but the petitioner is not required to show that "ultimate success is probable." *Id.* at 966–67. The petitioner may satisfy this standard by demonstrating that the appeal "raises serious

6

legal questions, or has a reasonable probability or fair prospect of success." *Id.* at 971. As an example, courts have found the burden is met when a petition implicates an area of law that is evolving, because the petition then raises a "serious legal question." *Wei Lin v. Valinken*, No. 1:19-cv-01806-EPG-HC, 2020 WL 1274133, at *2 (E.D. Cal. Mar. 17, 2020) (reasoning that the Supreme Court's decision to grant *certiorari* in a case implicating issues relevant to the order sought to be stayed showed that the petitioner had raised a "serious legal question").

In his motion to stay, petitioner argues that his case involves several complex questions of law not previously addressed or settled by the Ninth Circuit, "all of which Mr. Blasko has raised throughout these proceedings and intends to raise on appeal." (Doc. No. 24 at 9.) Specifically, petitioner raised two arguments in support of his petition that extradition should be denied. First, petitioner argues that his "extradition is time-barred under Article V of the Extradition Treaty Between the United States and Slovakia" because "the five-year Slovakian statute of limitations for the execution of punishment ran on April 15, 2018." (*Id.*) (citing Doc. No. 11 at 6–21). Second, petitioner argues that "extradition is barred because the government has failed to present sufficient competent evidence to establish probable cause that Mr. Blasko committed the charged offenses." (*Id.*)

In its opposition, the government argues that the court should deny petitioner's motion to stay this case because "he has failed to demonstrate that he is likely to obtain a reversal of this Court's decision in the Ninth Circuit." (Doc. No. 25 at 5.) The government contends that petitioner is not likely to succeed on appeal because the caselaw is clear and consistent "that a U.S. court presiding over an extradition proceeding should rely upon the requesting country's interpretation of its own statute of limitations." (*Id.* at 6) (citing *Fejfar v. United States*, 724 Fed. Appx. 621, 622 (9th Cir. 2018)). Here, the district court in Slovakia determined that the Slovakian statute of limitations was tolled. (17-mc-00067, Doc. No. 52-1 at 4.) The government points out that although petitioner has attempted to distinguish cases "applying this long-settled principle of law, this Court concluded [in its previous order] Blasko submitted no authority that any of the distinctions he attempted to draw made any difference." (*Id.*) The government lastly asserts that petitioner is not likely to prevail on appeal with respect to his claim that "no

7

competent evidence supports the extradition court's finding of probable cause." (*Id.*) According to the government, this court "thoroughly reviewed the factual record and found there was competent evidence to support the conclusion that there was probable cause to believe the petitioner was guilty." (*Id.*) The government concludes that "[n]either the factual nor legal conclusions of this court are likely to be disturbed on appeal." (*Id.* at 7.)

In his reply, petitioner argues that the government has misapplied the law in encouraging the court to require that he demonstrate a reversal is likely on appeal in order to support the granting of a stay. (Doc. No. 26 at 2.) From that perspective, petitioner avers, "there would never be any reason for any petitioner to ever appeal or to seek a stay." (*Id.*) (citing *Yoo v. United States*, 7:21-cv-06184-CS, 2021 WL 6100609, at *1 (S.D.N.Y. Nov. 16, 2021)). Petitioner emphasizes, as he did in his original petition for a writ of habeas corpus, that "[t]he government has not provided a single case where an extradition court permissibly relied wholesale on a requesting country's interpretation of its statute of limitations law in a case comparable to the one before this Court." (*Id.* at 3 n.2) (citing Doc. No. 8 at 8). Petitioner repeats that he has raised "serious legal questions for appeal, at least one of which presents an issue that, under the facts of this case, has never been specifically addressed by the Ninth Circuit." (*Id.* at 3.) Given the complex legal issues present in this case and the lack of authoritative case law pertaining to those issues, petitioner urges the court to grant the requested stay because raising serious legal questions satisfies the requirement with regard to a likelihood of success on the merits. (*Id.*) (citing *Gray v. Golden Gate Nat. Recreational Area*, No. 3:08-cv-00722-EDL, 2011 WL 6934433, at *1 (N.D. Cal. Dec. 29, 2011)).

As an initial matter, the court reaffirms its conclusions in the underlying order denying the petition for a writ of habeas corpus. As noted in that order, petitioner has simply failed to present any legal support that would justify a departure from the longstanding principle that American courts should "decline[] to rule on the procedural requirements of foreign law out of respect for other nations' sovereignty and because we recognize the chance of erroneous interpretation is much greater when we try to construe the law of a country whose legal system is not based on common law principles." *Sainez v. Venables*, 588 F.3d 713, 717 (9th Cir. 2009). Nonetheless,

1  the court finds petitioner's arguments as to its consideration of his showing of a likelihood of
2  success on the merits to be persuasive.  Petitioner contends that "the precise issue here presents an
3  issue of first impression for the Ninth Circuit" due to the fact that the Ninth Circuit has never
4  addressed "whether it is permissible for a district court to rely on a requesting country's judge's
5  legal conclusion as to a matter of foreign law where the . . . requesting country's judge's legal
6  conclusion was reached without a hearing or argument from the individual involved."  (Doc. No.
7  24 at 10.)  Although the undersigned cannot readily identify why such distinguishing facts would
8  undercut the Ninth Circuit's prior holdings in this area, it is also true that "further development of
9  the law on these issues to guide courts in this circuit" would provide no identifiable harm to the
10 government, as explained further below.  *Martinez*, 2014 WL 4446924, at *6.

11         Moreover, notwithstanding any deferential treatment to the Slovakian court, the
12 undersigned also recognized in denying Blasko's petition for a writ of habeas corpus that as of
13 October 2, 2017—when the United States filed the formal extradition complaint against him—
14 petitioner Blasko had clearly sojourned to the United States and was expressing an intent to avoid
15 that punishment by resisting extradition under the applicable treaty, as he was entitled to do under
16 the laws of the United States.  (Doc. No. 16 at 8.)  Therefore, since at least October 2, 2017, the
17 five-year statute of limitations has been tolled under Slovakian law and has not recommenced
18 running.  Petitioner argues that there is no evidence before this court that he attempted to flee or
19 conceal his location, and the undersigned completely agrees with that statement.  (Doc. No. 16 at
20 8.)  Nevertheless, petitioner has presented no authority for the proposition that such actions on his
21 part were necessary in order to support a finding under the applicable treaty that he "sojourned
22 abroad with the intent to avoid punishment" given that "sojourn" is defined as to stay somewhere
23 as a temporary resident or to stay at one place while travelling or for a short period, which
24 petitioner incontrovertibly did.  (*Id.*)  As to this issue, the court cannot identify any unanswered
25 legal question or likelihood of success on the merits as to the conclusions reached by the court.

26         All of that said, and despite the court's natural belief that it resolved these issues correctly,
27 because petitioner's appeal raises issues that the Ninth Circuit has not explicitly considered and
28 upon which "there are non-frivolous grounds for disagreement," consideration of this factor

9

1   weighs slightly in favor of the granting of a stay. *Yoo*, 2021 WL 6100609, at *1. Notably, other
2   district courts in this Circuit have concluded that a showing that "serious legal questions" have
3   been raised on appeal will satisfy the requirement of likelihood of success on the merits. *See*
4   *Gray*, 2011 WL 6934433, at *2; *Hunt v. Check Recovery Systems, Inc.*, No. 4:05-cv-04993-SBA,
5   2008 WL 2468473, at *3 (N.D. Cal. June 17, 2008); *Pokorny v. Quixtar Inc.*, No. 3:07-cv-00201-
6   SC, 2008 WL 1787111, at *1 (N.D. Cal. April 17, 2008).

7         Accordingly, the court finds that petitioner Blasko has made a sufficient showing of his
8   likelihood of success on appeal to warrant the granting of a stay.

9   **C.**  **Substantial Injury to Other Parties and Whether a Stay is in the Public Interest**

10         The third and fourth factors identified by the court in *Nken* (i.e., the effect of the stay on
11   the opposing party and the public interest) merge when the government is the party opposing the
12   stay. *Leiva-Perez*, 640 F.3d at 970 (citing *Nken*, 556 U.S. at 435); *Luna*, 2018 WL 2197555, at
13   *3 ("[T]he two remaining stay factors . . . merge into one 'public interest' factor because the
14   government is the party opposing Petitioner's stay motion. . . .")).

15         With regard to these factors, petitioner contends that the balance of hardships weighs in
16   his favor because absent a stay he will be removed from the United States, "where he has lived
17   with his wife and two young children since first arriving to the United States in February 2010,
18   over 12 years ago." (Doc. No. 24 at 12.) Petitioner argues that, in contrast, any hardship to the
19   United States and Slovakia if a stay is granted is far less compelling because "[t]he significant
20   delay and lack of urgency evidenced by Slovakia in this matter undercuts any claim at this point
21   that [petitioner's] immediate extradition is necessary notwithstanding Mr. Blasko's appeal to the
22   Ninth Circuit." (*Id.*) (citing various district court cases holding that long delays in seeking
23   extradition by the government counsel in favor of granting stays due to the demonstrated lack of
24   urgency). Moreover, petitioner argues that the public has an interest in allowing him to have a
25   full, fair opportunity to litigate his claims in opposing his extradition. (*Id.* at 13) (quoting
26   *Noriega v. Pastrana*, No. 1:07-cv-22816-PCH, 2008 WL 331394, at *3 (S.D. Fla. Jan. 31, 2008)).
27   According to petitioner, such an interest is heightened where his "extradition is being sought by a
28   country that does not observe comparable constitutional and procedural protections for the

accused." (*Id.*) (citing Doc. No. 16 at 4 n.4–5).  Lastly, petitioner points to his excellent behavior and his contributions to the community while released on bail in connection with these extradition proceedings.  (*Id.* at 14.)  He notes that he has maintained regular contact with the probation officer who has been supervising his release on bail; that he and his wife own a home in Clovis and have two young children; that he owns his own business that currently employs four individuals; and that his company is "in the middle of constructing seven homes throughout Fresno and Clovis."[2] (*Id.*)  Petitioner adds that since his release, he "has evidenced the utmost respect for the procedural process and has repeatedly indicated that if his claims were to be unsuccessful that he would surrender as required." (*Id.*)

In opposition, the government argues that "the United States has a strong interest in having extradition request[s] submitted by our treaty partners such as Slovakia resolved without undue delay, both to comply with our treaty obligations and to further our reciprocal interest in having other nations cooperate swiftly with our own extradition requests and other law enforcement objectives."  (Doc. No. 25 at 8–9.)  The government argues that there is always a public interest in the prompt execution of surrender orders.  (*Id.* at 9) (citing *Artukovic*, 556 U.S. at 436).  By contrast—according to the government—a stay that causes "unwarranted delay in the United States' fulfillment of its obligations to Slovakia" may harm its credibility in the international arena and "impair its ability to obtain the cooperation of foreign nations in bringing U.S. fugitives to justice." (*Id.*)

In his reply in support of his motion, petitioner reiterates that both Slovakia and the United States have proceeded with a marked lack of urgency in this extradition case.  (Doc. No. 26 at 6.)  Petitioner points out that he was not charged in Slovakia until three years after the alleged incident, and that despite knowing his location within the United States, over the next several years, petitioner was not notified by Slovakia that charges were being pursued against him in that country.  (*Id.*)  Moreover, petitioner underscores that "[e]ven after an *in absentia* trial took

---

[2] The undersigned has confirmed with the supervising probation officer petitioner's full compliance with all of the conditions placed upon his release as well as his maintenance of open and complete communication with the probation office.

11

place without Mr. Blasko's knowledge or presence" on April 15, 2013, "Slovakia did not actually seek his extradition until June 6, 2017, over four years after the *in absentia* trial, and nearly 10 years after the alleged incident." (*Id.*) (emphasis in original).  Thus, petitioner once more urges the court to conclude that the balance of hardships and the general public interest weigh in favor of granting his request for a stay of extradition.

        The court again finds petitioner's arguments as to this factor to be persuasive.  For the reasons already expressed above, petitioner has presented legal challenges to his extradition that are worthy of review and consideration by the court of appeals.  Furthermore, the undersigned does not believe that staying its certification order to allow petitioner to seek appellate review will substantially injure the other parties in this proceeding, especially given Slovakia's demonstrated lack of urgency in pursuing this matter.  As petitioner has argued, the incident underlying this extradition request occurred on July 13, 2007, but petitioner was not charged with the offense until three years later on June 3, 2010.  Then, his *in absentia* trial took place without petitioner's knowledge or presence three additional years later on April 15, 2013.  It was not until June 6, 2017, that the Embassy of the Slovak Republic in Washington, D.C. finally issued a formal Diplomatic Note to the United States Department of State requesting Blasko's international extradition and providing the documentation required by the treaty between the two countries.

        Although the court agrees with the United States that honoring its treaty obligations is important, the court does not agree that permitting petitioner to seek appellate review of his legal claims in this case interferes with the ability of the United States to comply with its treaty obligations.  As one district court concluded, "staying extradition to allow [petitioner] to seek appellate review of his claims that the extradition is unlawful clearly is in the public interest." *Martinez*, 2014 WL 4446924, at *6; *see also Nken*, 556 U.S. at 427 ("The authority to hold an order in abeyance pending review allows an appellate court to act responsibly.  A reviewing court must bring considered judgment to bear on the matter before it, but that cannot always be done quickly enough to afford relief to the party aggrieved by the order under review.").  The public interest in prompt execution of extradition orders "is not so urgent that it should outweigh [petitioner's] interest in having a 'full [and] fair opportunity to litigate his claim.'" *Yoo*, 2021

WL 6100609, at *2 (quoting *Noriega*, 2008 WL 331394, at *3).  Finally, the court highlights that to the extent any delay has occurred in this case, it has not been the result of delay on petitioner Blasko's part.  "Nor is his request to have his 'serious questions' reviewed by the court of appeals in any way an abuse of the legal process."  *Martinez*, 2014 WL 4446924, at *6.  The delays in this case have been caused in large part by the government of Slovakia, as well as this court itself, which again apologizes for the extensive delay in the issuance of orders in this matter due to the long-standing and ongoing judicial emergency in the U.S. District Court for the Eastern District of California.  (*See* Doc. No. 16 at 1, n.5.)

Accordingly, the court concludes that consideration of the third and fourth factors of the *Nken* test likewise weigh in favor of granting the requested stay.

**CONCLUSION**

For the reasons set forth above, petitioner's motion for a stay of extradition pending his appeal of this court's May 16, 2022 order denying his petition for a writ of habeas corpus is hereby granted.  Petitioner Blasko shall remain released on bail pending appeal of the extradition order in this case with all of the terms and conditions set on August 6, 2018 and February 8, 2019 continuing to govern in full force and effect.  *See* Case No. 1:17-mc-00067-DAD-SAB, Doc. Nos. 45-49, 70-73, 76.

IT IS SO ORDERED.

Dated:   **August 31, 2022**

UNITED STATES DISTRICT JUDGE